## Case No. 18,139.

### YORK'S CASE.

[1 Abb. U. S. 503: [1] 4 N. B. R. 479 (Quarto, 156); 10 Am. Law Reg. (N. S.) 36.]

Circuit Court, D. Louisiana. May, 1870.

BANKRUPTCY—APPEALS—SUPERVISORY POWERS OF CIRCUIT COURT.

1. In computing the time within which an appeal in bankruptcy must be taken, Sunday is to be counted, except that when the last day would fall on Sunday, that Sunday is to be excluded.

[Cited in Shefer v. Magone, 47 Fed. 873.]

2. The decision of a district court, sitting in bankruptcy, upon an application to confirm a sale made of a bankrupt's estate, is not a matter within the general supervisory jurisdiction

conferred by section 2 of the bankrupt law of 1867 (14 Stat. 518) upon the circuit courts.

3. A proceeding in bankruptcy, from the filing of the petition to the distribution of the bankrupt's estate and his discharge, is a single statutory proceeding.

[Cited in Alabama & C. R. R. Co. v. Jones, Case No. 126.]

4. When it occurs, pending this proceeding, that the assignee or creditor is driven to file a bill in equity or bring an action at law, the circuit court has no supervisory jurisdiction of the proceedings had therein, nor has it when the claim of a supposed creditor has been rejected in whole or in part,—nor where the assignee is dissatisfied with the allowance of a claim. These classes of cases may be taken up on writ of error or appeal.

5. Other questions, however, arising in the district court in the progress of a case in bankruptcy, whether of legal or equitable cognizance, fall within the supervisory jurisdiction of the court, and may, upon bill, petition, or other proper process of any party aggrieved, be heard and determined in the circuit court as a court of equity.

[2] [This was a petition to review certain proceedings in bankruptcy in the district court of Louisiana. Ober, Atwater & Co. claimed first mortgages on two plantations surrendered by the bankrupts, York & Hoover. They obtained an order for the sale of them, and purchased both at the assignee's sale. They applied for a rule to confirm the sale, and asked that the proceeds of sale be applied to the extinguishment of their mortgages. The Citizens' Bank and other creditors answered the rule, and alleged that the mortgage of Ober, Atwater & Co. on one of the plantations had been extinguished, and on the other it was only second in rank. They further alleged that Ober, Atwater & Co. had influenced a competitor not to bid for one of the plantations, and had also made overtures to the solicitor of the assignee, calculated to give them an unjust preference over other creditors with respect to both. The district court made the rule absolute (Case No. 18,138), and the Citizens' Bank appealed, and also joined the other creditors in a petition of review to the circuit court.

[Hyams & Jones and Randolph, Singleton & Browne, for appellants, cited Judd v. Fulton, 10 Barb. 117; Snyder v. Warren, 2 Cow. 518; 6 Cow. 605; Broom, Leg. Max. 22; Wathen v. Beaumont, 11 East, 271; Story v. Elliott, 8 Cow. 28; McGill v. Bank of U. S., 12 Wheat. [25 U. S.] 511; 2 Hill, 375; Long v. Hughes, 1 Duv. 387; Fowler v. Smith, 1 Rob. (La.) 448; Johns v. Boyle, 14 La. 268; Gorham v. De Armas, 7 Mart. (La.) 359; State v. Boyle, 9 La. Ann. 371.

[R. & H. Marr, for appellees.] [2]

Before BRADLEY, Circuit Justice, and WOODS, Circuit Judge.

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

[2] [From 10 Am. Law Reg. (N. S.) 36.]

WOODS, Circuit Judge. York & Hoover having been declared bankrupts by the adjudication of the district court, E. E. Norton, their assignee, filed a petition in said district court sitting as a court of bankruptcy, praying for an order to sell two plantations, the property of bankrupts. An order of sale was made, and under it a sale of the plantations, called respectively "White Hall" and "Home," was made on the sixteenth day of February, 1869, and Ober, one of the creditors, became the purchaser. On a later day in February, 1869, C. H. Slocomb, one of the creditors of York & Hoover, filed his petition in the district court, setting forth the fact of the sale to Ober, that no deed had, at the time of filing his petition, been made by Norton, the assignee, to Ober, charging that the sale was fraudulent, and therefore illegal and void, and praying, on behalf of himself and other creditors of York & Hoover, that Ober, Norton, the assignee, and others show cause, on Saturday, March 6, 1869, at eleven o'clock a. m., why the sale should not be set aside; and in the mean time that they, and each of them, might be enjoined from taking any steps towards perfecting said sale, or conveying said plantations to the purchaser.

Pursuant to the prayer of this petition, an order was made, and the parties named were cited to show cause why the prayer of the petition should not be granted. The minutes of the district court of the date of March 19, 1869, shows the following entry: "No. 603. Matter of York & Hoover. On motion of H. D. Stone, attorney of E. E. Norton, and upon showing to the court that a sale was made of two plantations surrendered herein,—namely, the 'Home' and 'White Hall' plantations, situated in the parish of Concordia (here follows a description of the two plantations), on the 16th of February, 1869, and upon further showing to the court that the following parties appear to have had mortgages, privileges, claims, and liens upon said plantations (here follow the names of some fifty creditors), it is ordered that the parties above named, and the bankrupts, and all persons interested herein, show cause on the 1st day of May, 1869, at 11 o'clock a. m., why said sale should not be confirmed; and at the same time the priority and rank of said mortgages, privileges, liens, and claims be fixed and adjudicated; that, as so adjudicated, the same be directed to be paid; that notice thereof be given by publication in the New Orleans Republican for three days, the last publication to be at least ten days before such hearing."

After this order to show cause was made by the court, precisely when we are unable to ascertain from the papers submitted to us, the Citizens' Bank of Louisiana and a large number of other creditors of York & Hoover filed an exception, in which they set out various grounds why the sale should not be confirmed, and conclude by praying that the application of the assignee for the confirmation of the sale be refused and rejected, and that said sale be set aside and annulled.

On the day fixed for the hearing of this rule, the matter of the rule and exceptions thereto were referred by the district court sitting in bankruptcy to a commissioner, with instructions to ascertain and report upon the validity of the sale, and the priority of the claims; and subsequently the commissioner reported that there was no fraud or collusion in making the sale, and that certain mortgages held by Ober, Atwater & Co. on said "White Hall" and "Home" plantations were the first and best liens on those places respectively, and that the amount due on them was more than the proceeds of the sale. Thereupon it was ordered by the court, on motion, that the report of the commissioner, if not opposed within three days, be approved and homologated.

Exceptions were filed to the report of commissioner, and afterwards,—to wit, on January 11, 1870,—the district court confirmed the sale, but reserved the question of priority of mortgages and liens for further argument. On March 31, 1870, the district court declared that the mortgages of Ober, Atwater & Co. were the first lien on said plantations, and on the proceeds of the sale thereof, and directed them to be paid in preference to any of the other mortgages set up in the oppositions of the creditors of York & Hoover, and directed the money arising from the sale to be paid to Ober, Atwater & Co. On April 5, 1870, an application was made for a rehearing on the matters embraced in this decision of the court, and on April 27 a rehearing was refused.

The Citizens' Bank and other creditors of York & Hoover, on May 9 took an appeal from the order of the court of March 31, which in effect dates from the refusal for rehearing on April 27. And on the same May 9 said Citizens' Bank and other creditors filed in this court a petition invoking its supervisory jurisdiction, under section 2 of the bankrupt act, and praying that the orders and decrees of the district court above recited be set aside, the sales of said plantations declared null and void, and the same ordered to be resold, and that their mortgages be decreed to have priority.

The case is heard upon two questions: (1) Whether the appeal was taken within the time limited by law; and (2) whether the case presented by the petitions of the Citizens' Bank and others, was a case for the supervisory jurisdiction of the court, and whether this court has jurisdiction thereof.

I. As intimated during the argument, we are of opinion that if this were a proper case for appeal, the appeal was taken too late. If Sundays are counted, the delay of ten days allowed for the appeal had expired before the appeal was taken. Unless Sundays are expressly excepted in the statute, they are to be counted. The language

of section 8 of the bankrupt act is: "No appeal shall be allowed from the district to the circuit court, unless it is claimed and notice thereof given to the clerk * * * within ten days after the entry of the decree or decision appealed from." The rule for computing the number of days within which an appeal is allowed is expressly declared by section 48 of the bankrupt act as follows: "In all cases in which any particular number of days is prescribed by this act * * * for the doing of any act, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day, unless the last day shall fall on Sunday, in which case the time shall be reckoned exclusive of that day also." The fair, and, as it seems to us, unavoidable inference, is that when Sunday is not the last day, it is not to be excluded. Applying this rule, excluding April 27, the day on which the decree was signed, the time for appeal in this case expired with May 7. The appeal not having been taken till the ninth, it was two days too late.

II. The other question presented is, whether this is a proper case for the supervisory jurisdiction of this court. By section 2 of the bankrupt act, it is provided that "the circuit courts in the districts where proceedings in bankruptcy are pending shall have a general superintendence and jurisdiction of all cases and questions arising under this act, and except where special provision is otherwise made may, upon bill, petition, or other proper process of any party aggrieved, hear and determine the case as a court of equity." "The only construction which gives due effect to all parts of this section is that which, on the one hand, excludes from the category of general superintendence and jurisdiction of the circuit court, the appellate jurisdiction defined by section 8, and on the other brings within that category all decisions of the district court or district judge at chambers which cannot be reviewed upon appeal or writ of error under the provisions of that section." Chief Justice Chase, in Re Alexander [Case No. 160]. By section 8 of the act it is provided that appeals may be taken from the district to the circuit court in all cases in equity, and writs of error may be allowed to the circuit court from the district court in cases at law under the jurisdiction created by the bankrupt act when the debt or damages claimed amount to more than five hundred dollars; and any supposed creditor, whose claim is wholly or in part rejected, or an assignee who is dissatisfied with the allowance of a claim may appeal. Now, according to the decision of Chief Justice Chase, just quoted, unless this case falls under one of the classes provided for in this section, it is a proper case for the supervisory jurisdiction of the court.

1. It is not the case of an assignee who is dissatisfied with the allowance of a claim.

2. It is not the case of a supposed creditor, whose claim has been wholly or in part re-jected. The claims of these petitioning creditors, so far as the record shows, have all been allowed in full. It is true the court has decided that their claims are not entitled to priority, and that other creditors are; but this is not a rejection of their claims. A creditor's claim is the debt due from the bankrupt to him, and the question of priority of payment is one totally distinct from the question of the allowance or rejection of the claim or debt. We think this is clear from section 1 of the act, which extends the jurisdiction of the court to all cases and controversies between the bankrupt and any creditor who shall claim any debt or demand under the bankruptcy; to the collection of the assets; to the ascertainment and liquidation of liens, &c.; to the adjustment of the various priorities and conflicting interests of all parties.

Here is an evident distinction made between the claim of a debt or demand against the bankrupt, and priority as to other creditors. A claim of priority is not a claim asserted against the bankrupt, but a right asserted against other creditors.

3. The matter decided by the district court on March 31 is not a case at law in which a writ of error would lie. This is clear, and is not disputed. It remains, then, to consider whether it was a case in equity in which an appeal might be taken. The phrase "case in equity" in section 8, in our view means a suit in equity. It would seem hardly necessary to cite authority to show what a case or suit in equity is. Blackstone says: "The first commencement of a suit in chancery is by preferring a bill to the lord chancellor in the style of a petition; 'humbly complaining, showeth to your lordship, your orator,' &c. This is in the nature of a declaration at common law, or a libel and allegation in the spiritual courts, setting forth the circumstances of the case at length; 'and for that your orator is wholly without remedy at the common law,' relief is therefore prayed at the chancellor's hands, and also process of subpoena against the defendant, to compel him to answer under oath all the matters charged in the bill. The bill must call all the necessary parties, however remotely concerned in interest, before the court, and must be signed by counsel."

The seventh equity rule, as prescribed by the supreme court of the United States, provides that the process of subpoena shall constitute the proper mesne process in all suits in equity, to require the defendant to appear and answer the exigency of the bill. Rule 12 provides that whenever a bill is filed the clerk shall issue process of subpoena thereon, which shall be returnable into the clerk's office the next rule day, or the next rule day but one, at the election of the plaintiff, occurring after twenty days from the issuing thereof.

It is further provided in the equity rules that the appearance day shall be the rule day

to which the subpœna is made returnable, provided the defendant has been served with process twenty days before that day; otherwise his appearance day shall be the next rule day succeeding the rule day when the process is returnable. And it is made the duty of defendant to file his plea, answer, or demurrer to the bill on the rule day next succeeding his appearance.

From what has preceded, it will be seen, what is a case in equity, how it is instituted, and how the parties are brought into court, and when they are required to answer. If we decide that the case before the court is not one for its revisory jurisdiction, we in effect decide that the matter which was passed on by the district court on March 31 was a case in equity. In other words, that a mere motion entered upon the minutes of the court without a prayer for relief, without a prayer for process, is a bill in equity; that a notice published three times in a newspaper is service of process, and brings parties into court as if served with a subpœna in chancery; and that a decree rendered upon such rule when only a portion of the parties referred to in the rule make any appearance whatever; when only a part of them file any response to the motion, and that in the way of an exception, and not sworn to; when no decrees pro confesso are taken against those who do not appear, is a final decree in a case in equity, from which, under the judiciary act, an appeal lies to the circuit court. The mere statement of the proposition is its own refutation. Nor do we think the case made by the petition of Slocomb, even if it was held to give character to the proceeding and decision which petitioning creditors seek to review, is any more of a case in equity than the motion of the assignee Norton by his solicitor Stone. There is scarcely anything in the petition which assimilates it to a bill in equity. It is, in fact, nothing more than a motion in writing. It simply prays that "said Ober, the said assignee, and said Girardy & Co., show cause, on a certain day, why the said sales should not be set aside as void, and until the hearing that the parties named be enjoined from taking any steps towards perfecting said sales. Only three or four of the persons interested in the question are named in the petition—the great mass of them are left out entirely; no prayer of process; no demand for answer under oath; no service of process, and, in fact, scarcely any of the common incidents of a bill in equity are to be found in this petition. To call it a bill in equity, or the proceeding a case in equity, it seems to us is an entire misapprehension of the meaning of the terms.

But it is insisted that the setting aside a sale for fraud and determining the priorities of liens are matters of purely equitable cognizance, and therefore the proceeding sought to be reviewed is a case in equity from which appeal lies.

Courts of law frequently pass upon questions purely equitable, on motion or rule; but the nature of the question has never been held to make such motion or rule a case in equity. It is a very common practice for courts of law, on motion, to set aside sales made by a sheriff on execution on account of some fraud or unfairness on the part of the sheriff or purchaser; yet he would be a bold man who would insist that such a motion was a case in equity. When money is brought into court, the proceeds of a sale on execution, courts of law do not hesitate, on motion, to direct how the money shall be distributed, assuming to pass upon the priorities of claimants to the fund; yet it has never been supposed that by so doing they were rendering a decree in chancery, or that the motion to distribute the fund according to the rights of the parties made a case in equity. These two things, passing upon the validity of a sale, and directing the distribution of the fund arising therefrom, on motion or rule to show cause, are precisely what the district court did, and we do not think the motion was a case in equity, or the ruling of the court a decree in equity. It was the simple exercise of a power incident to courts of law as well as equity, to regulate the proceedings in a case pending before it, to control its own process, and to distribute funds brought into court.

Our general view of the whole subject is this: The proceeding in bankruptcy, from the filing of the petition to the discharge of the bankrupt and the final dividend, is a single statutory case or proceeding. In the conduct of the case a large number of questions may arise. Before the assets of the bankrupt can be collected and distributed, it will frequently occur that the assignee or a creditor is driven to a regular bill in equity or an action at law. In these cases the circuit court has no supervisory jurisdiction, nor has it where the claim of a supposed creditor has been rejected in whole or in part, or where the assignee is dissatisfied with the allowance of a claim. These classes of cases may be taken up on writ of error or appeal. But all other cases, and questions arising in the progress of a case of bankruptcy through the bankruptcy court, whether the matter is of legal or equitable cognizance, and when the matter is not the subject of a regular suit in equity or at law, or is the allowance or disallowance of a claim, fall within the supervisory jurisdiction of the court, and may upon bill, petition, or other proper process of any party aggrieved, be heard and determined in the circuit court as a court of equity.

We think the motion to dismiss the petition of review in this case not well taken. It is, therefore, overruled.

The appeal, we think, is not well taken, both because not taken in time, and because the matter decided was not the subject of appeal. The appeal is therefore dismissed.