# CODER, TRUSTEE OF ARMSTRONG, BANKRUPT, *v.* ARTS.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 93. Argued January 26, 1909.—Decided April 5, 1909.

Where a creditor presents a claim to the trustee joined with a statement that he has security upon the estate which it is his purpose to maintain and upon which he is entitled to priority, he institutes a proceeding in bankruptcy as distinguished from a controversy aris-- ing in the course of bankruptcy proceedings and an appeal lies to the Circuit Court of Appeals under § 25*b*, and the party aggrieved is not limited by § 24*b* to a petition for revision; and an appeal also lies to this court, under the rules prescribed by it, if the amount involved exceeds $2,000 and the question involved is one which gives jurisdiction to this court to review judgments of the state courts under § 709, Rev. Stat., or if a certificate of a justice of this court is made as required by par. 2 of subd. *b* of § 25.

General Order of this court, No. 36 in bankruptcy, which requires an appeal from a judgment of the Circuit Court of Appeals to be taken within thirty days, and that the court from which the appeal lies to make findings of fact and conclusions of law within thirty days *held* to be complied with by the Circuit Court of Appeals making findings within such thirty days, and directing them to be filed *nunc pro tunc* as of the day of entry of judgment, the appeal having also been taken within thirty days from such day of entry.

Where the claimant against a bankrupt's estate asserts a lien which would be defeated under the construction placed upon the bankruptcy act by the trustee, and the lien is allowed, a Federal question is involved, which if involved in a case in the state court would give this court jurisdiction to review the judgment under § 709, Rev. Stat., and the case is appealable from the Circuit Court of Appeals to this court under § 25*b* of the bankruptcy act.

On appeals from the Circuit Court of Appeals under § 25*b* this court, under par. 3 of General Orders in Bankruptcy No. 36, can only look at the facts found by the Circuit Court of Appeals.

An attempt to prefer is not necessarily an attempt to defraud, nor is a

preferential transfer always a fraudulent one. The question of fraud depends upon the motive, and in order to invalidate a conveyance as one made to hinder, delay or defraud creditors within the meaning of § 67e of the bankruptcy act actual fraud must be shown.

In this case a mortgage given within four months of filing the petition to secure advances and while the mortgagee did not know of the mortgagor's insolvency, although the latter did, and which mortgage was found not to have been made with intent to hinder, delay or defraud creditors, *held* not to be voidable under § 67e of the bankruptcy law and that the mortgagee was entitled to priority thereon with interest.

152 Fed. Rep. 943, affirmed.

THE facts, which involve the construction of certain provisions of the bankruptcy act, are stated in the opinion.

*Mr. Myron L. Learned,* for appellant:

This controversy was one "arising in bankruptcy proceedings" and was therefore appealable under § 24a of the bankruptcy act. *Hewit* v. *Berlin Machine Works,* 194 U. S. 296; *Dodge* v. *Norlin,* 133 Fed. Rep. 363, and cases there cited; *In re McKenzie,* 142 Fed. Rep. 383; *In re Holmes,* 142 Fed. Rep. 391; *Hendricks* v. *Webster,* 159 Fed. Rep. 927; *Burleigh* v. *Foreman,* 125 Fed. Rep. 217; *Smith* v. *Means,* 148 Fed. Rep. 89; *Mason* v. *Wolkowich,* 150 Fed. Rep. 699; *Security Warehousing Co.* v. *Hand,* 143 Fed. Rep. 32; *Hinds* v. *Moore,* 134 Fed. Rep. 221; *McCarty* v. *Coffin,* 150 Fed. Rep. 307; *In re McMahon,* 147 Fed. Rep. 684; *In re Mueller,* 135 Fed. Rep. 711.

The intent and purpose to hinder, delay or defraud creditors are to be presumed from the giving of the mortgage of May 2, 1904, when its necessary effect was to so hinder, delay or defraud. *Crow* v. *Beardsley,* 68 Missouri, 439; *Wager* v. *Hall,* 16 Wall. 584; *Johnson* v. *Wald,* 93 Fed. Rep. 640; *In re McGee,* 105 Fed. Rep. 895; *Toof* v. *Martin,* 13 Wall. 40; *Wilson* v. *City Bank,* 17 Wall. 473; *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502; *In re Ed. W. Wright Lumber Co.,* 114 Fed. Rep.

.1011; *In re Platts*, 110 Fed. Rep. 126; *In re McLam*, 97 Fed. Rep. 922; *Pollock* v. *Jones*, 124 Fed. Rep. 163; *In re Gutwillig*, 92 Fed. Rep. 337; *S. C.*, 90 Fed. Rep. 475.

Conceding that the claimant had no knowledge of the bankrupt's true financial condition on May 2, 1904, still the mortgage is void under the provisions of § 67*a* of the bankruptcy act. *Wilson Bros.* v. *Nelson*, 183 U. S. 191; *In re Richards,* 96 Fed. Rep. 935; *Pirie* v. *Trust Co.*, 182 U. S. 438; *Thompson, Trustee,* v. *Fairbanks*, 196 U. S. 516; *Keppel* v. *Tiffin Savings Bank*, 197 U. S. 356; *Morgan et al.* v. *First National Bank of Mannington*, 145 Fed. Rep. 466; *Pollock* v. *Jones*, 124 Fed. Rep. 163.

The validity of a mortgage given within four months preceding bankruptcy, to secure a preëxisting, unsecured indebtedness, has been passed on and denied in many cases. *City National Bank* v. *Bruce* (C. C. A.), 109 Fed. Rep. 69; *In re Sanderlin*, 109 Fed. Rep. 857; *In re Jones*, 118 Fed. Rep. 673; *In re Sawyer*, 130 Fed. Rep. 384; *In re Cobb*, 96 Fed. Rep. 821; *In re Belding*, 116 Fed. Rep. 1016; *In re Wolf*, 98 Fed. Rep. 84; *In re Gutwillig*, 90 Fed. Rep. 475; *In re Durham*, 114 Fed. Rep. 750; *Davis* v. *Turner*, 120 Fed. Rep. 605; *In re Pease*, 129 Fed. Rep. 447.

The amount allowed claimant by the Circuit Court of Appeals is excessive.

The Court of Appeals has computed and allowed interest to March 1, 1906, on the amount found due Arts, instead of to July 27, 1904.

The claim of Arts being provable only as an unsecured claim, interest should have been allowed on the amount found due only to July 27, 1904, the date when the petition was filed. Section 63 of the bankruptcy act of 1898; U. S. Comp. Stat. 1901, p. 3447.

· *Mr. George S. Wright,* with whom *Mr. Robert E. O'Hanly* was on the brief, for appellee:

No appeal lay from the District Court to the Court of Appeals,

under § 25a of the bankruptcy act or otherwise, hence there can be no appeal to this court. *In re Worcester County*, 102 Fed. Rep. 808; *Morgan v. Bank*, 145 Fed. Rep. 466; *In re Whitener*, 105 Fed. Rep. 180; *In re Abraham*, 93 Fed. Rep. 767; *In re Mueller*, 135 Fed. Rep. 711; *In re First National Bank of Louisville*, 155 Fed. Rep. 100; *In re McMahon*, 147 Fed. Rep. 684; *In re Rouse, Hazard & Co.*, 91 Fed. Rep. 96; *In re Cosmopolitan Power Co.*, 137 Fed. Rep. 858; *Gaudette v. Graham*, 164 Fed. Rep. 311; *Hutchinson v. Otis*, 190 U. S. 552, 555; *First National Bank v. Trust Company*, 198 U. S. 280.

No appeal lies from the decision of the Court of Appeals, under § 25b of the bankrupt act or otherwise, because the question of allowance or rejection of a claim is not involved.

No appeal lies from the decision of the Court of Appeals, under § 25b of the bankrupt act or otherwise, because the question involved is not one that might have been taken on appeal or writ of error from the highest court of a State to this court. *Chapman v. Bowen*, 207 U. S. 89.

As used in the act, the words "with intent to hinder, delay or defraud creditors" do not cover cases in which conveyances are made with the honest purpose on the part of the debtor, though insolvent, of paying or securing a debt. The conveyance denounced is one specially intended by the maker to have the effect of hindering and delaying creditors in the satisfaction of their claims, a contrivance for the purpose of protecting his property. It does not cover a case where a mortgage is given for the purpose of securing an honest debt, although incidentally the result may be to delay or hinder other creditors. The intent to hinder or delay must be actual, not presumed as a consequence of acts. *In re Eggert*, 43 C. C. A. 1; *S. C.*, 102 Fed. Rep. 735; *Jacobs v. Van Sickle*, 61 C. C. A. 598; *S. C.*, 127 Fed. Rep. 62; *Lansing v. Ryerson*, 63 C. C. A., 253; *S. C.*, 128 Fed. Rep. 701; *Githerns v. Shiffler*, 112 Fed. Rep. 505; *Hark v. Allen Co.*, 146 Fed. Rep. 665; *Congleton v. Schreifer* (N. J.), 54 Atl. Rep. 144; *In re Virginia &c. Co.*, 139 Fed. Rep. 209; Bump on Fraudulent Conveyances, 45; *Rison v. Knapp*, Fed.

Cas. No. 11,861; *Summerville* v. *Milling Co.*, 142 California, 529; *Drury* v. *Cross*, 7 Wall. 299, 303; *Davis* v. *Swartz*, 155 U. S. 631, 639.

There is no presumption that a mortgage by an insolvent is given with the intent and purpose to hinder, delay or defraud creditors. Case below, 152 Fed. Rep. 947; Brandenburg on Bankruptcy (3d ed.), § 962; Loveland on Bankruptcy (2d ed.), §§ 159, 160; *Pirie* v. *Trust Company*, 182 U. S. 438, 446; *Keppel* v. *Bank*, 197 U. S. 366.

MR. JUSTICE DAY delivered the opinion of the court.

Alexander Armstrong, upon a petition in voluntary bankruptcy, was adjudicated a bankrupt by the United States District Court for the Southern District of Iowa on August 6, 1904. Josiah Coder, appellant, was duly elected and qualified as trustee. On August 26, 1904, William Arts, appellee, filed a claim for $104,880.46 against the bankrupt estate on certain promissory notes, to wit, one in the sum of $2,700.00, dated May 19, 1900, due May 19, 1901; one in the sum of $18,453.00, dated December 26, 1903, due March 26, 1904; one in the sum of $20,000.00, dated January 29, 1904, due on demand; one in the sum of $58,826.50, dated January 29, 1904, due January 30, 1905; and one in the sum of $5,512.40, dated June 17, 1904, due on demand.

It was alleged in the claim filed that the first four notes were secured by a real estate mortgage, dated May 2, 1904, covering 2,280 acres of land in Carroll County, Iowa, and the last note by a real estate mortgage of June 17, 1904, covering 615½ acres of land in Monona County, Iowa. The claimant asked for the allowance of his notes against the estate, reserving all rights to his securities in every portion thereof. The trustee filed an answer and objections to the claim of Arts, attacking both the notes and the mortgage, alleging, in substance, that the bankrupt was not indebted to the claimant in the amount named; that two of the notes were really obligations of the sons of Armstrong, signed by Arts as surety; that the mortgage was

given to secure a preëxisting indebtedness within four months of the adjudication in bankruptcy; that at the time of the giving of the mortgage the property of the bankrupt was not at a fair valuation sufficient to pay his debts, and that he was insolvent; that the claimant or his agents knew the bankrupt's condition, or had knowledge of such facts as would put them on inquiry; that the mortgage was given with the intent and purpose to prefer claimant; that claimant or his agents had reason to believe a preference was intended; and that the mortgage was made and given within four months of the adjudication in bankruptcy with the intent and purpose to hinder, delay or defraud creditors.

Testimony was taken before the referee, and upon exceptions to his findings the case went before the District Judge, who set aside the findings of the referee, made findings of fact and entered the following order:

"It is therefore hereby ordered, adjudged and decreed that the said claim of William Arts, on account of the four notes referred to in the fourth finding of facts herein, and secured by the said mortgage of May 2, 1904, be and the same are established against the trustee and estate of Alexander Armstrong, bankrupt, and the said notes and the mortgage securing the same, are hereby declared to have been a good, valid and [enforceable] lien on the property described in said mortgage from the time of the giving and recording of said mortgage down to the time when said property was sold by the trustee in bankruptcy herein, under order of this court, discharged and free and clear of all liens, and are now a good, valid, and [enforceable] lien on the proceeds of the sale of said land in the hands of the trustee. To which said order, adjudication and decree, and each part thereof, the trustee excepts.

"It is further ordered, adjudged and decreed that the said claims of the said William Arts on account of said four notes, aggregating, principal and interest, the sum of $97,497.40, as found in the fifth finding of fact, herein to be paid in full to the said William Arts, claimant, by the trustee out of the funds

and moneys in his hands by him received on account of the sale of the lands covered by said mortgage and hereinbefore described after the payments of all prior liens and claims thereon as determined by this court. To which said order, adjudication and decree, and each part thereof, the trustee excepts.

"It is further ordered, adjudged and decreed that the note and claim of $5,512.40 referred to the fourteenth finding of fact herein, be, and the same is hereby, established as against the trustee and the estate, and that as to said claim the said William Arts will participate in said estate as a general creditor. To which said order, adjudication and decree, and each part thereof, the trustee excepts.

"It is further ordered, adjudged and decreed that the said mortgage of June 17, 1904, given to secure said claim of $5,512.40, be not enforced, but is hereby set aside, cancelled and held for naught, and treated as though never given, and the claimant Arts take nothing under the mortgage."

The case is reported in the District Court in 145 Fed. Rep. 202. *Sub nomine* In re Armstrong.

The trustees took the case to the Circuit Court of Appeals for the Eighth Circuit upon petition for a review and by appeal. That court dismissed the petition for review, and, after considering the appeal, sustained the findings of the District Court and affirmed its judgment, except upon the matter of interest on the notes secured by the mortgage, wherein it differed from the District Court, and held that Arts was entitled to interest on the notes to be paid out of the fund. 152 Fed. Rep. 943. This correction of interest was made upon the petition of Arts for review. An appeal was then taken to this court upon a petition for allowance of appeal, stating the allowance of the claim and the establishment of the lien thereof. The ground of appeal alleged was that the amount in controversy exceeded the sum of $2,000, and that it was a proper case to appeal from the Court of Appeals to the Supreme Court of the United States. The appeal was allowed within thirty days of the entry of the decree, and afterwards, within thirty days, an order was made

which recited that the court had made certain findings of fact and conclusion of law, and the same were entered *nunc pro tunc* as of the date of the judgment, as follows:

"1. Alexander Armstrong filed a voluntary petition in bankruptcy on July 27, 1904, in the District Court of the United States for the Southern District of Iowa, and was adjudged a bankrupt thereon on August 6, 1904.

"2. For many years prior to May 2, 1904, he had been engaged principally in farming in Carroll County, Iowa, and on that day he owned a tract of 80 acres of land and a tract of 2,360 acres of land in that county, 616½ acres of land in Monona County, a residence and business lot in Glidden, Iowa, 200 or 300 head of cattle, 30 horses, a large number of hogs and some farm machinery. Mortgages which amounted to about $18,000 had been recorded against a part of the land in Carroll County, and the land in Monona County had been traded for in April, 1904, and taken subject to one-half of a mortgage for $40,000. All of the other property was free from incumbrance. But the residence in Glidden was his homestead and exempt from execution.

"3. William Arts was the sole owner of a state bank in Carroll, Iowa, which he opened in 1898, and his son, W. A. Arts, was the cashier. In June, 1898, the bank commenced loaning money to Armstrong, and continued to loan moneys to him in amounts varying from $20,000 to a few hundred dollars at a time, and to renew old loans, until on May 2, 1904, Armstrong owed Arts $98,503.32 evidenced by notes, and $2,000 evidenced by an overdrawn account in the bank. This indebtedness had been increasing steadily from June, 1898, by reason of the new loans and the accrual of interest. Armstrong first opened an account in Arts' bank in April, 1900. Prior to that time he had kept an account in another bank in Carroll, in which Arts had owned a large interest up to the time he opened his own bank, in 1898.

"4. Armstrong had the reputation of being one of the wealthiest men in Carroll County, and no security had been required

of or given by him to Arts until May 2, 1904, when he gave a mortgage on 2,360 acres of his land in Carroll County to secure the payment of $98,503.22 evidenced by his notes, and this mortgage was recorded on May 3, 1904. It was executed at the request of the cashier of the bank, or at the request of his brother, who had been called home by reason of the serious illness of their father, William Arts.

"5. Armstrong was insolvent on May 2, 1904, when he gave the mortgage to Arts, and he then knew that he was insolvent.

"6. Neither Arts nor any of his agents acting therein knew or had reasonable cause to believe that Armstrong was insolvent when he gave the mortgage of May 2, 1904, nor did Arts or any of his agents acting therein then have reasonable cause to believe that it was intended thereby to give him a preference over other creditors by the execution of that mortgage.

"7. Armstrong did not make the mortgage of May 2, 1904, with any intent or purpose on his part to hinder, delay or defraud his creditors or any of them.

"8. There is due to the appellee on the notes secured by the mortgage of May 2, 1904, with interest to March 1, 1906, the sum of $109,107.56, and this amount should be paid to appellee by the appellant out of the funds and moneys in his hands which he received on account of the sale of the lands covered by that mortgage.

### Conclusions of Law.

"1. The mortgage of May 2, 1904, is not voidable by the trustee under sections 60*a* and 60*b* of the bankruptcy law, because neither Arts nor his agents acting therein had reasonable cause to believe that it was intended thereby to give a preference.

"2. The mortgage of May 2, 1904, is not null or void as against the creditors of the mortgagor, Armstrong, under section 67*e*, because it was not made with the intent or purpose on his part to hinder, delay or defraud his creditors or any of them.

"3. The giving of the mortgage of May 2, 1904, to Arts did

not as a matter of law constitute any evidence of any intent on the part of the bankrupt to hinder, delay or defraud other creditors within the meaning of section 67e, notwithstanding the fact that its necessary effect was to hinder and delay other creditors and to deprive them of an opportunity they might otherwise have had to collect larger portions of their claims.

"4. The mortgage of May 2, 1904, though given within four months of the adjudication in bankruptcy to secure a preëxisting unsecured indebtedness was valid, and the appellee should be paid $109,107.56 out of the proceeds of the sale of the mortgaged property."

It is contended by the appellee that the case should be dismissed for want of jurisdiction of the Circuit Court of Appeals and of this court. Questions of the jurisdiction in bankruptcy, particularly of the appellate courts, have given rise to numerous and not altogether reconcilable decisions. The bankruptcy act, as originally passed, did not give the bankruptcy courts jurisdiction over plenary suits to recover the property alleged to belong to the trustee in bankruptcy, except with the consent of the defendant. This was the subject of full consideration and determination in *Bardes* v. *The Bank*, 178 U. S. 524. Subsequent decisions of this court construed the act to give the bankruptcy courts jurisdiction over controversies concerning the property in possession of the bankruptcy courts. *Whitney* v. *Wenman,* 198 U. S. 539; *Murphy* v. *John Hoffman, Co.,* 211 U. S. 562.

Section 24 of the bankruptcy act provides:

"*a*. The Supreme Court of the United States, the Circuit Courts of Appeals of the United States, and the Supreme Courts of the Territories, in vacation in chambers and during their respective terms, as now or as they may be hereafter held, are hereby invested with appellate jurisdiction of controversies arising in bankruptcy proceedings from the courts of bankruptcy from which they have appellate jurisdiction in other cases. The Supreme Court of the United States shall exercise a like jurisdiction from courts of bankruptcy not within any

organized circuit of the United States and from the Supreme Court of the District of Columbia.

"*b*. The several Circuit Courts of Appeal shall have jurisdiction in equity, either interlocutory or final, to superintend or revise in matter of law the proceedings of the several inferior courts of bankruptcy within their jurisdiction. Such power shall be exercised on due notice and petition by any party aggrieved."

By paragraph *b* of § 24 the Circuit Courts of Appeals have jurisdiction to superintend and revise in matters of law, proceedings of the several inferior courts of bankruptcy within their jurisdiction. The proceeding under this section is designed to enable the Circuit Court of Appeals to review questions of law arising in bankruptcy proceedings, and is not intended as a substitute for the right of appeal upon controverted questions of fact under the right of appeal given in controversies arising in bankruptcy proceedings (§ 24), or the special appeal given in certain cases under § 25.

Section 25 of the act provides for appeals in bankruptcy proceedings, and in such proceedings appeals may be taken from the courts of bankruptcy to the Circuit Courts of Appeals in three classes of cases.

We are concerned in this case with the third class, "from a judgment allowing or rejecting a debt or claim of five hundred dollars or over." The appeal must be taken within ten days after the judgment.

It is therefore apparent that the mode of appeal in a given case depends upon the character of the proceeding. And the question to be solved in such cases is, Does the case present a proceeding in bankruptcy or is it a controversy arising in bankruptcy proceedings?

A reference to the adjudications in this court may assist in clearing the matter. *Hewit* v. *Berlin Machine Works*, 194 U. S. 296, is an illustration of a controversy arising in bankruptcy proceedings (§ 24a) wherein the appeal is under § 6 of the act of March 3, 1891. In that case the Berlin Machine Works

asserted title to the property in the possession of the trustee, and intervened in the bankruptcy proceedings, raising a distinct and separable issue as to the title to property in the possession of the trustee. This court, speaking through the Chief Justice, held that the case presented a controversy arising in bankruptcy proceedings appealable to the courts of appeal as other cases under § 6 of the act of March 3, 1891. Nor is the decision in *Hewit* v. *Berlin Machine Works* inconsistent with *First National Bank of Chicago* v. *Chicago Title & Trust Co.*, 198 U. S. 280. In that case there was an attempt on the part of the trustee to invoke an adjudication as to the title to property which the District Court found not to be in the possession of the trustee, notwithstanding the petition of the trustee had averred possession, and it was held that when this fact appeared the District Court had no longer jurisdiction of the case under the doctrine laid down in *Bardes* v. *Bank, supra,* and ought to have dismissed the case.

We are thus brought to the determination of the question, Was the proceeding instituted by Arts a controversy arising in bankruptcy proceedings, or did he institute a bankruptcy proceeding, properly speaking? The answer to this question depends upon an examination of the manner in which the jurisdiction of the bankruptcy court was invoked for the determination of the rights involved. The record discloses that Arts filed in due form a claim upon the promissory notes, setting them forth in detail, asking that they be allowed as a proper claim against the assets in the hands of the trustees to be administered, described the mortgage as being the only security held by him for the payment of the debt, and concluded his claims with this statement: "The deponent, in filing his claim herein against the bankrupt, does so with the express understanding that he makes no waiver of any portion of his security, and expressly reserves said security and every portion thereof to the amount of said claim, including the cost, if any, of collecting payment thereof out of said property held as security."

He thus in effect presented to the trustee in bankruptcy a

claim upon his notes, joined with the statement that he had security upon the estate which it was his purpose to maintain, and upon which he was entitled to priority in the distribution of the assets.    He did not, as was the case in *Hewit* v. *Berlin Machine Works, supra; York Manufacturing Company* v. *Cassell,* 201 U. S. 344; *Security Warehousing Co.* v. *Hand,* 206 U. S. 415, intervene in the bankruptcy proceedings for the purpose of asserting an independent and superior title to the property held by the trustees, claiming the right to recover the property and to remove it from the jurisdiction of the bankruptcy court as a part of the estate to be administered.    Arts appeared in the bankruptcy court, recognizing the title and possession of the trustee in bankruptcy, asserted his claim upon the notes, and his right to have the assets so administered and paid as to recognize the validity of the lien for the security for his claim. We are of opinion that he thus instituted a proceeding in bankruptcy as distinguished from a controversy arising in the course of bankruptcy proceedings.    This being the character of the proceeding, its subsequent disposition and the appropriate appellate jurisdiction are to be determined by the provisions of the bankruptcy act governing bankruptcy proceedings.

It is true that Arts asserted both a debt and a lien to secure the same.    In such cases the procedure as to the debt or claim governs, with incidental right to consider and determine the validity and priority of the lien asserted upon the property in the hands of the bankrupt's trustee.    This method of procedure was recognized in *Hutchinson* v. *Otis,* 190 U. S. 552.    In that case Otis, Wilcox & Company, having a claim for $4,421.64, had sued and attached the bankrupt's property within four months of filing the petition in bankruptcy.    Otis, Wilcox & Company, supposing their attachment good, took judgment by default and collected their debts from the attached parties, the trustee agreeing to save them harmless from liability; satisfaction was entered in each suit.    Subsequently the trustee demanded payment of these debtors of the bankrupt, and, as they had no defense, Otis, Wilcox & Company paid to the trus-

tee the amount of the debts. Otis, Wilcox & Company then filed a claim in bankruptcy, which was allowed in the lower court; and they asserted a lien upon the bankrupt estate. After disposing of the question of the effect of the satisfaction, and deciding that the claim was provable, speaking of the asserted lien, this court said:

"Under the circumstances of this case it seems to us that the petition [asserting the lien] was incident to the claim, *Cunningham* v. *German Insurance Bank*, 101 Fed. Rep. 977; *S. C.*, 4 Am. Bank. Rep. 192, and was a bankruptcy proceeding under section 2, cl. 7, within the meaning of section 25, regulating appeals in bankruptcy proceedings, and that the decree upon it was not, 'a judgment allowing or rejecting a debt or claim of five hundred dollars or over,' within section 25*a*, 3, and was not an independent ground of appeal. See *In re Whitner*, 105 Fed. Rep. 180, 186; *In re Worcester County*, 102 Fed. Rep. 808, 813; *In re Rouse, Hazard & Company*, 91 Fed. Rep. 96; *In re York*, 4 N. B. R. 479, 483. If the question should be held to come up as an incident to the appeal on the proof, *Cunningham* v. *German Insurance Bank, supra,* we see no error in the decree of the District Court."

The contest in the Otis case, as in this, was over the claim presented, and, incidentally, to establish a lien upon the bankrupt's estate.

It is insisted, however, that inasmuch as the trustee in the case at bar made no objection to the amount found due upon the notes by the District Court, and only sought by his appeal to further contest the right to the security asserted by Arts, that his sole remedy was under § 24*b*—to have a revision in the Circuit Court of Appeals by a petition filed for that purpose, and that the Circuit Court of Appeals should have dismissed the attempted appeal. But we are of opinion that the character of the proceeding must be determined by the nature of the claim set up against the trustee in bankruptcy, and as § 25*b* gives an appeal to the Court of Appeals from a judgment allowing or rejecting a debt or claim of $500 or over, that the ap-

peal was properly allowed in this case, and brought before the Circuit Court of Appeals the validity of the claim and the lien asserted securing the debt.

The question remains, Has this court jurisdiction by appeal from the Circuit Court of Appeals? This depends upon subdivision *b* of § 25, giving an appeal, under such rules as may be prescribed by this court, where the amount in controversy exceeds the sum of $2,000, and the question involved is one which might have been taken on appeal or writ of error from the highest court of the State to this court; or where some Justice of this court shall make a certificate, as required under paragraph 2 of subdivision *b.* As there is no such certificate, the question is, Was the appeal taken within the time prescribed by the rules of this court, and is the question involved one which might have been taken on appeal or writ of error from the highest court of the State to this court? The general order in bankruptcy No. 36 provides that appeals under the act from the Circuit Court of Appeals to this court shall be taken within thirty days after the judgment or decree, and that in every such case "the court from which the appeal lies shall, at or before the time of entering its judgment or decree, make and file a finding of the facts, and its conclusions of law thereon, stated separately; and the record transmitted to the Supreme Court of the United States on such an appeal shall consist only of the pleadings, the judgment or decree, the finding of facts, and the conclusions of law." The appeal was taken within the thirty days. The Circuit Court of Appeals made the findings of fact and conclusions of law part of the record by an order, made within thirty days, directing the same to be filed *nunc pro tunc* as of the date the judgment entered. It is insisted that this is not a compliance with the rule that requires the findings to be made at or before the time of entering its judgment or decree. But we think that the court must be presumed to have acted within its authority to correct the record by this order made within the time allowed for an appeal to make it show the findings at or before the time of entering the judgment.

Is the case one which might have been taken to this court upon appeal or writ of error from the highest court of the State? We are of opinion that it is. In determining the validity of the lien asserted to secure the claim a construction of the bankruptcy act is directly involved. A construction of the act is insisted upon by the appellant which would defeat the lien. On the other hand, the construction contended for by the appellee would give the lien validity. In such a case, had the case been in the state court, it might have been brought here for review under § 709 of the Revised Statutes. *Rector* v. *The City Deposit Bank,* 200 U. S. 405; *St. Louis & Iron Mountain R. R. Co.* v. *Taylor,* 210 U. S. 281, 293. It is contended that a contrary ruling was made in *Chapman, Trustee,* v. *Bowen,* 207 U. S. 89. But, in concluding the opinion of the court in that case, Mr. Chief Justice Fuller said:

"The decision below proceeded on well-settled principles of general law, broad enough to sustain it without reference to provisions of the bankruptcy act. And, moreover, even if it could be held that by his claim Bowen asserted any right within the meaning of section 709, Rev. Stat., the decision was in his favor, and the trustee's bare denial of the claim could not be relied on under that statute. *Jersey City & Bergen Railroad Company* v. *Morgan,* 160 U. S. 288."

We, therefore, reach the conclusion that the claim presented instituted a proceeding in bankruptcy, and, being for over $500 it was appealable to the Circuit Court of Appeals, bringing to that court the validity of the asserted lien, and that appeal lies to this court under § 25b, as the claim exceeded $2,000, and, with the lien asserted thereon, presented a case for the construction of the bankruptcy act which might have been brought here under § 709 of the Revised Statutes had the case been decided by the highest court of the State. We, therefore, entertain the case upon its merits, and will proceed to examine the validity of the lien asserted under the mortgage to Arts upon the facts found by the Circuit Court of Appeals.

In an appeal of this character we can look only at the facts

found by the Circuit Court of Appeals. General Orders in Bankruptcy, 36, paragraph 3. The question before us is, upon the findings of fact made by the Circuit Court of Appeals, Should the mortgage to Arts of May 2, 1904, securing the sum of $98,503.32, have been invalidated? The mortgage was placed on a large tract of land in Carroll County, Iowa. The record discloses that this was not all the property of the bankrupt. Just what the other property was worth above incumbrances does not definitely appear. It does appear, however, that the bankrupt owned a residence and business lot in Glidden, Iowa, 200 or 300 head of cattle, thirty horses, a large number of hogs and some farm machinery, unincumbered. And it is specifically found that although Armstrong was insolvent on May 2, 1904, and knew that he was insolvent, neither the mortgagee nor any of his agents knew or had reasonable cause to believe that Armstrong was then insolvent; nor did Arts or any of his agents then have reasonable cause to believe that it was intended thereby to give a preference over other creditors by the execution of the mortgage. It is further specifically found that Armstrong did not make the mortgage in question with any intent or purpose on his part to hinder, delay or defraud his creditors, or any of them. The decision of the case requires consideration of certain sections of the bankruptcy act. Section 60, subdivision *a*, provides:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months of the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such a judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Such preferences may be set aside under the condition named in subdivision *b* of § 60, which is as follows:

"If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting

therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

Manifestly this conveyance could not be set aside under the provisions of § 60b. For, while it is true that under the facts found the conveyance might be deemed a preference, as a transfer of property which would have the effect of enabling one creditor to obtain a larger percentage of his debt or claim than other creditors of the same class, yet, as it is distinctly found, that neither the mortgagee nor his agent had any reasonable cause to believe that it was intended to give a preference, the same could not be avoided under § 60b.

The reliance in this case is upon § 67e of the act. This section, so far as it is necessary to consider it, reads as follows:

"d. Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act.

"e. That all conveyances, transfers, assignments, or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act, subsequent to the passage of this act-and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or incumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors."

It is the contention of the appellant that as the necessary consequence of the giving of the mortgage under consideration was to hinder, delay or defraud creditors of the bankrupt in the collection of their debts, Armstrong must be presumed to have intended such consequences, and the mortgage is therefore voidable.

A consideration of the provisions of the bankruptcy law as to preferences and conveyances, shows that there is a wide difference between the two, notwithstanding they are sometimes spoken of in such a way as to confuse the one with the other. A preference, if it have the effect prescribed in § 60, enabling one creditor to obtain a greater portion of the estate than others of the same class, is not necessarily fraudulent. Preferences are set aside when made within four months, with a view to obtaining an equal distribution of the estate, and in such cases it is only essential to show a transfer by an insolvent debtor to one who himself or by his agent knew of the intention to create a preference. In construing the bankruptcy act this distinction must be kept constantly in mind. As was said in *Githens* v. *Shiffler*, 112 Fed. Rep. 505: "An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one." In *In re Maher*, 144 Fed. Rep. 503–509, it was well said by the District Court of Massachusetts:

"In a preferential transfer the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among all creditors, which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent transfer the fraud is actual, the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him."

Is the conveyance voidable under subdivision *e*, § 67? Under the terms of that subdivision a fraudulent conveyance is made void as to creditors, except as to grantees in good faith and for a present fair consideration. The provision saving conveyances to purchasers in good faith and for a present fair consideration prevents such conveyances from being declared void

by the act, although they have been made by the bankrupt
with the intent on his part to hinder, delay or defraud his cred-
itors. But the act does not dispense with the necessity of show-
ing, to avoid a conveyance or transfer under § 67e, that the
bankrupt had the actual intent to hinder, delay or defraud
creditors. What is meant when it is required that such con-
veyances in order to be set aside shall be made with the intent
on the bankrupt's part to hinder, delay or defraud creditors?
This form of expression is familiar to the law of fraudulent con-
veyances, and was used at the common law, and in the statute
of Elizabeth, and has always been held to require, in order to
invalidate a conveyance, that there shall be actual fraud; and
it makes no difference that the conveyance was made upon a
valuable consideration, if made for the purpose of hindering,
delaying or defrauding creditors. The question of fraud de-
pends upon the motive. Kerr on Fraud and Mistake, 196, 201.
The mere fact that one creditor was preferred over another, or
that the conveyance might have the effect to secure one. cred-
itor and deprive others of the means of obtaining payment, was
not sufficient to avoid a conveyance; but it was uniformly rec-
ognized that, acting in good faith, a debtor might thus prefer
one or more creditors. *Stewart et al.* v. *Dunham et al.*, 115 U. S.
61; *Huntley* v. *Kingman*, 152 U. S. 527.

We are of opinion that Congress, in enacting § 67e, and using
the terms "to hinder, delay or defraud creditors," intended to
adopt them in their well-known meaning as being aimed at
conveyances intended to defraud. In § 60 merely preferential
transfers are defined, and the terms on which they may be set
aside are provided; in § 67e, transfers fraudulent under the well-
recognized principles of the common law and the statute of
Elizabeth are invalidated. The same terms are used in § 3,
subdivision 1, in which it is made an act of bankruptcy to
transfer property with intent to hinder, delay or defraud credit-
ors. Such transfers have been held to be only those which are
actually fraudulent. It was so held in *Lansing Boiler & Engine
Works* v. *Ryerson*, 128 Fed. Rep. 701. Considering the lan-

guage, which is identical with that in § 67*e*, the Circuit Court
of Appeals, speaking through Judge Severens, said:

"The language of subsection 1 of section 2 is the familiar
language of statutes against conveyances fraudulent as against
creditors, and we think there can be no doubt that Congress
intended the words employed should have the same construc-
tion and effect as have for a long period of time been attrib-
uted to those words. *Githens* v. *Shiffler*, 112 Fed. Rep. 505.
And so construed, the test of the conveyance intended by sub-
section 1 of section 3 is that of the *bona fides* of the transfer.
Loveland's Bank., 2 ed., sec. 51. For it is the well-settled law
that a conveyance made in good faith, whether for an antece-
dent or a present consideration, is not forbidden by such stat-
utes, notwithstanding that the effect may be that it hinders or
delays creditors by removing from their reach assets of the
debtor."

And to the same effect is the decision of the Circuit Court of
Appeals of the Second Circuit in *In re Bloch*, 142 Fed. Rep.
674, 676, in which that court had occasion to consider the mean-
ing of § 67*e*, as applicable to § 57*g*, of the act as amended in
1903, requiring the surrender of preferences voidable under
§ 60, subdivision *b*, or of fraudulent conveyances voidable under
§ 67*e*, in order to make proof of a claim, and in considering
§ 67*e*, Judge Townsend, speaking for the court, said:

"We think Congress must be presumed to have intended
by the introduction of section 67*e* to require a surrender only
of such transfers as would have been fraudulent at common
law, or would constitute an act of bankruptcy under section
3 of the act. In *Githens* v. *Shiffler, supra,* the bankrupt used
the proceeds of a sale of property to prefer certain creditors.
The court, upon a review of the authorities, held that section
3 applied only to those transfers which, according to the estab-
lished course of authority, constituted a fraudulent transfer
at the time of the passage of the bankruptcy act, and held that
a mere preferential transfer, as distinguished from a fraudulent
one, was not an act in bankruptcy under said section 3.

"The question as to whether a transfer is made with intent to hinder, delay or defraud depends upon whether the act done is a *bona fide* transaction. Loveland on Bankruptcy, 391; *Cadogan* v. *Kennet,* 2 Cowper, 435; *Lansing Boiler and Engine Works* v. *Ryerson, supra.* An intent to defraud is the test of the right to avoid a transfer under section 67*e.*"

In dealing with this question this court said, in *Thompson* v. *Fairbanks,* 196 U. S. 516:

"There is no finding that in parting with the possession of the property the mortagor had any purpose of hindering, delaying or defrauding his creditors or any of them. Without a finding to the effect that there was an intent to defraud, there was no invalid transfer of the property under the provisions of section 67*e,* of the bankruptcy law."

That it is essential to show actual fraud in order to invalidate conveyances under § 67*e,* is the view of the textwriters upon this subject. Loveland on Bankruptcy (3d ed.), 476; Collier on Bankruptcy (6th ed.), 562; 1 Remington on Bankruptcy, § 1498.

We do not agree, if such is to be held the effect of the third conclusion of law in the finding of the Court of Appeals, that the giving of the mortgage and its effect upon other creditors could not be considered as an item of evidence in determining the question of fraud. What we hold is that to constitute a conveyance voidable under § 67*e,* actual fraud must be shown.

How, then, stands the case at bar? As we have already said, we must decide this case upon the facts found in the Circuit Court of Appeals, and it is therein found that in making the mortgage in question, Armstrong had no intention to hinder, delay or defraud his creditors. In view of the finding of the Circuit Court of Appeals, it may be that Armstrong, though including in the conveyance a large amount of his property, acted in good faith, with a view to preserving his estate and enabling him to meet his indebtedness. Such conveyances were valid at the common law and under the statute from which this feature of the law was taken, and, while Congress in the

bankruptcy act strikes down preferential conveyances which come within its terms where the party preferred has good reasons to believe that a preference is intended, it has not declared voidable merely preferential conveyances made in good faith and in which the grantee, as is found in this case, was ignorant of the insolvency of the grantor, and had no reason to believe that a preference was intended. Nor do we think the Circuit Court of Appeals erred in holding that inasmuch as the estate was ample for that purpose, Arts was entitled to interest on his mortgage debt. Finding no error in the judgment of the Court of Appeals, the same is

*Affirmed.*