## In re GOTHAM CAN CO.

### No. 18062.

District Court, E. D. New York.

Dec. 1, 1930.

Oppenheimer, Kaufman, Haiblum & Kupfer, of New York City (Leo N. Haiblum and Eli S. Silberfeld, both of New York City, of counsel), for petitioner.

Joffe & Joffe, of New York City (Louis Joffe and Stanley Rosenthal, both of New York City, of counsel), for trustee.

BYERS, District Judge.

This is a hearing on a petition to review the order of the referee in bankruptcy dated October 9, 1930, denying the petition of the Merchants' Transfer & Storage Company,

and directing the latter to turn over all accounts receivable to the trustee upon the payment by the trustee to it of the sum of $75.04, and expunging the proof of claim filed by the Merchants' Transfer & Storage Company in the sum of $4,376.20.

The errors assigned are: That the said order failed to direct the trustee to pay over to the Merchants' Transfer & Storage Company moneys collected by the trustee on accounts receivable upon which advances had been made to the bankrupt; that it directed the Merchants' Transfer & Storage Company to turn over to the trustee all accounts receivable held by it, upon the payment by the trustee to the Merchants' Company of $75.04; that it failed to permit the Merchants' Company to retain all such accounts receivable until its full balance, including its expenses and counsel fees, shall have been paid to it, and that the proof of claim above referred to was expunged.

The Merchants' Transfer & Storage Company, which, for convenience, will be hereinafter referred to as the finance company, entered into a contract with the bankrupt on December 18, 1928, by the terms of which the finance company agreed to buy acceptable open accounts receivable of the bankrupt, paying therefor 100 per cent. of the face value thereof, of which 77 per cent. was to be paid in cash, and the remaining 23 per cent., less any deductions and plus any overpayments by the debtors, immediately upon payment to the finance company, and the compensation of the finance company was agreed to be 1/30 of 1 per cent. of the face value of said accounts "for each day from date of purchase by and until paid to second party (the Finance Company), plus $5 per $1,000 only on the first $100,000 of Accounts purchased within any one year from the date of this contract. This compensation shall be payable to second party (the Finance Company) not later than the 10th of the month immediately following that for which such compensation is due."

Collections of the accounts, by the terms of the contract, were to be made by the bankrupt, and all original checks and other evidences of payment were to be transmitted to the finance company.

The finance company agreed to place its collection department at the disposal of the bankrupt, "and upon request endeavor to collect direct from the debtors any Accounts purchased hereunder"; have its auditor give advice, and place its credit department at the disposal of the bankrupt, and permit sales contracts with its customers to be submitted to the general counsel of the finance company for advice, etc.

The compensation above quoted covers services on the part of the finance company as above set forth.

The only provision of the contract having to do with the counsel fees is contained in paragraph seventh, having to do with a breach of any of the provisions of the contract "either through the act of first party (the Bankrupt) or others, the damages to (sic) which second party (the Finance Company) shall be entitled to recover from first party, as a result thereof, shall include all attorneys' fees, Court costs and all other expenses which may be expended or incurred by second party (the Finance Company) to obtain or to enforce payment of any Account purchased hereunder, either against the debtor, first party, or any of its guarantors, or in the prosecution or defense of any action or concerning any matter growing out of or connected with the subject-matter of this contract and Accounts purchased hereunder. * * * *"

It is provided in the fifth paragraph of the contract that, in consideration of the purchase of the accounts and remittance by the finance company, the bankrupt warrants that it is solvent and will remain so until the maturity "thereof," and that there will be no bankruptcy petition or any act amounting to a business failure by or against the bankrupt or any of its debtors.

Presumably it is the breach of that condition of the contract which gives rise to the attorneys' fees herein discussed.

At the time of the adjudication, the finance company had advanced a total sum of $8,231.25, against which it held the security in the sum of $10,674.97 of uncollected accounts; these were not valued as of the date of the adjudication, but, as contemplated by section 57, subdivision (h), of the Bankruptcy Act (11 USCA § 93(h), the said accounts were converted into money with the following result:

| | |
|---|---:|
| Cash received by Finance Company | $8,156.21 |
| Allowances and discount made by Finance Company | 134.77 |
| Cash received by Trustee | 529.52 |
| Total | $8,820.50 |

As at the date of the referee's report, the uncollected accounts held by the finance company represented $1,854.57, and the finance company, as above stated, filed a proof of debt in the sum of $4,376.20.

 The finance company contended before the referee that it had the right to charge against the sum collected by it certain attorneys' fees stated in the petitioner's brief filed herein, in the sum of $300, "for employment of counsel in the supervision of the various accounts liquidated."

As this sum presumably represents services rendered because of the adjudication in bankruptcy, they may be said to have been contemplated by the contract, and it may be proper, in principle, to allow such charge. See In re Rosenblatt (D. C.) 299 F. 771.

It would be rational to argue that the bankrupt estate has been benefited by the collection of the accounts, if the equity of the bankrupt in the remaining accounts has been thereby increased. The value of such services, however, must be fixed by the bankruptcy court and not by the finance company.

 The finance company also seeks to include its "service charges" accrued from the date of adjudication to March, 1930, aggregating $384.87.

It is quite clear from the terms of the contract that the service charge of $\frac{1}{30}$ of 1 per cent. per day is really interest, and the contract of this finance company has been so read by the District Court of the District of Massachusetts. See Estes v. E. B. Estes & Sons (D. C.) 24 F.(2d) 756.

Therefore, the question is whether the finance company is entitled to charge interest from and after the adjudication in bankruptcy. The answer to that question in the negative is found in the case of Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 55 L. Ed. 244.

There is a conceded sum owing by the trustee to the finance company of $75.04, which the referee has ordered the trustee to pay to the finance company upon its turning over all accounts receivable to the trustee.

The order of the referee will be confirmed, and the finance company will be directed to turn over all accounts receivable to the trustee upon the payment of the said sum of $75.04, subject to the allowance by the referee of the reasonable value of counsel fees, payable out of the said accounts so to be turned over, if, in his judgment, the estate of the bankrupt has been benefited by the serv-

ices of the finance company's counsel; the reasonable value of such services to be fixed by the referee.

Settle order on two days' notice.

### On Motion for Reargument.

On behalf of reargument of the decision made herein, the secured creditor urges that the court misapprehended the decision of the Supreme Court in Sexton v. Dreyfus, 219 U. S. 339, 31 S. Ct. 256, 258, 55 L. Ed. 244, because in that case the secured creditor was not fully paid out of his security, or could not be as in this case, and hence was not permitted to prove interest according to the terms of his security, after the filing of the petition.

That here the security is ample to pay the after-accruing interest, and hence the cases are to be distinguished, and that the decision in the Fifth Circuit of People's Homestead Ass'n v. Bartlette, 33 F.(2d) 561, should be followed.

It is urged that the Supreme Court, in the Dreyfus Case, referred with approval to the earlier case of Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008, which is in harmony with the secured creditor's position. The reference in terms is as follows: "The view that we adopt is well presented in the late Judge Lowell's work on Bankruptcy, § 419; seems to have been entertained in Coder v. Arts, 15 L. R. A. (N. S.) 372, 82 C. C. A. 91, 152 F. 943, 950 (affirmed without touching this point, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008)."

Thus it would seem that, if the Supreme Court in the Dreyfus Case had intended to distinguish between the realization of sufficient funds in the liquidation of the security, and the failure so to do, as decisive of the secured creditor's right to interest, the opportunity to do so was presented.

The decision herein obviously has to do only with the facts presented, and there is no intention of deciding what rule would govern the sale of mortgaged real estate as in the case of People's Homestead Ass'n v. Bartlette.

Here the secured creditor, having elected to liquidate its security in piecemeal over a considerable period of time, seeks to be allowed interest at approximately 12 per cent. per annum, from the filing of the petition until completion of the liquidation, which would be deducted from the equity in the bankrupt's accounts as at the date of filing the petition. That was the moment when the

creditors acquired a right in rem against the assets, as is stated in the opinion in the Dreyfus Case.

While it may be difficult, or perhaps impossible, to distinguish, in principle, the position of this secured creditor from that of the mortgagee in the Homestead Association Case, there was no element of inadvertence in deciding this motion according to what was said in the opinion of the Dreyfus Case, and in the realization that the facts there under examination differed from those here presented, in the respect indicated.

█ It is not believed that the fortuitous liquidation here involved, which resulted in the secured creditor's being paid back all that it loaned with interest to the date of the filing of the petition, requires this court in the decision of this particular controversy to adopt any rule other than that stated in the opinion relied upon, namely, that the filing of the petition "fixes the moment when the affairs of the bankrupt are supposed to be wound up."

Motion for reargument denied.