772

## BOGART v. MILLER LAND & LIVE-STOCK CO.

### No. 9946.

Circuit Court of Appeals, Ninth Circuit.

July 21, 1942.

Rehearing Denied Sept. 14, 1942.

Gunn, Rasch and Gunn, M. S. Gunn, Carl Rasch, and M. C. Gunn, all of Helena, Mont., for appellant.

C. Liebert Crum, of Parkman, Wyo., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from an order made in a proceeding under the conciliation features of § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203 subs. a to r. The question presented relates to the authority of the court to reduce the rate of interest on a secured debt.

From the somewhat sketchy record it appears that the debtor (appellee), after the filing and approval of its petition under the act, made an extension proposal which was accepted by the requisite majority of its creditors and was confirmed by the court October 27, 1939. By its proposal as accepted and confirmed the debtor undertook to pay all creditors in full. Secured claims, with interest at the contract rate, were to be paid within three years. Unsecured claims were to be paid with interest at the rate of 5% per annum within a period of twelve months after the payment of secured creditors. Following the confirmation of this proposal, appellant filed his claim and an order approving the same was made March 25, 1940. The indebtedness to appellant, which is secured by a first mortgage upon real property of the debtor, is in the principal amount of $150,-000 and bears interest at the contract rate of 6% per annum. The claim filed is against the security alone.

It is to be gathered from the record that approximately $200,000 of unsecured claims were approved in the proceeding. The precise amount of the secured debts, aside from that owing appellant, is not shown; but it does appear that there is at least one other secured claim, amounting to $9,300 and bearing interest at the rate of 9%. Under the terms of the extension secured creditors were given the option to accept the amount of a reasonable annual rental upon the property held as security, or, in the alternative, annual payments equal to 10% of the debt owing. Appellant elected to take under the latter alternative.

Subsequent to the approval of his claim appellant applied to the court for leave to foreclose, asserting that the proposed payment for the year 1940 had not been fully met. The debtor controverted this contention; and eventually appellant's application was conditionally denied. In a cross petition filed in response to the application the debtor alleged that the real property securing appellant's debt was, at the commencement of the proceeding, worth many times the amount of the mortgage thereon; and that since that time the debtor had substantially increased the value and productivity of the security.[1] The petition of the debtor further stated that "considering the value of the security, the amount of the investment, the present money market and all the circumstances surrounding such investment, as well as the best interests of all of the parties, including the unsecured creditors of Debtor who have claims of approximately $200,000.00, it is just, equitable and right that the Court should reduce the interest

---

[1] In its pleading the debtor states that the land mortgaged to appellant (more than 16,000 acres) is worth $800,000.

rate upon [appellant's] claim from six per cent to three and one-half per cent per annum and that the Proposal heretofore made be modified accordingly insofar as the claim of [appellant] is concerned." It was stated that such modification would not adversely affect any other creditor but would be of benefit to the debtor and to the other creditors, in that the reduction of the interest rate payable to appellant "will naturally lessen the time within which all creditors shall be paid." Appellant demurred to the granting of this application on the ground that on the facts alleged the court was without authority to give such relief. On August 16, 1941, the court made an order granting the application and reducing the interest rate on appellant's claim to 4% per annum.[2] This appeal followed.

Appellant argues that where, as here, the security is ample to discharge the mortgage debt, and particularly where the mortgagee asserts no claim against the debtor personally, the bankruptcy court is without power to reduce the contract rate of interest. The authorities are said to hold that the right of the mortgagee to the payment of interest, as well as principal, to the extent of the security furnished by the lien of the mortgage, is a vested right protected by the Fifth Amendment.[3] We have not, however, inquired into the constitutional question. Nor do we determine whether, in the absence of the consent of the requisite majority of creditors, the court has statutory authority to modify the terms of an extension arrangement by reducing generally the rate of future interest.

It is said, and the court below thought, that authority for the action taken here is to be found in subsections $l$ and $k$ of the statute. Subsection $l$ provides, among other things, that "the court may, after hearing and for good cause shown, at any time during the period covered by an extension proposal that has been confirmed by the court, set the same aside, reinstate the case, and modify the terms of the extension proposal." Subsection k is shown on the margin.[4] As originally enacted, the proviso of this subsection stated merely that "such composition or extension shall not reduce the amount of nor impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." The proviso was changed to read as at present by an amendment contained in the Act of August 28, 1935, 49 Stat. 942, C. 792, § 3. The clause at the end of the proviso, having reference to the reduction of the future rate of interest, was also added by that act.[5]

[2] The order was as follows: "The application of debtor for a reduction of interest on the Bogart claim, in the above entitled cause, is now before the court for consideration. The briefs for and against the application have been carefully considered, and as a result, the court is now convinced that the application of debtor presents a proper case for allowance of a reduction of interest, and that the court has authority to entertain such request; consequently, in the opinion of the court, the interest rate on the above claim should be reduced to 4% per annum, and it is so ordered."

[3] Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Wright v. Vinton Branch of Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L. Ed. 736, 112 A.L.R. 1455.

[4] "(k) Upon its confirmation, a composition or extension proposal shall be binding upon the farmer and his secured and unsecured creditors affected thereby: Provided, however, That such extension and/or composition shall not reduce the amount of or impair the lien of any secured creditor below the fair and reasonable market value of the property securing any such lien at the time that the extension and/or composition is accepted, but nothing herein shall prevent the reduction of the future rate of interest on all debts of the debtor, whether secured or unsecured."

[5] Subsection k appears to relate solely to the power of the court to confirm a plan which has had the approval of a majority of creditors. The Senate Committee having the 1935 amendments under consideration (Senate Report No. 985, 74th Congress, 1st Session) reported that: "The amendment to subsection (k) relates to the confirmation of a composition or extension proposal. It provides that a majority of the secured creditors may agree to accept such a proposal, provided it does not reduce the amount of or impair the lien of any secured creditor below the fair market value of the property. The majority of the secured creditors may agree to accept a lower rate of future interest than the contract interest. It does not affect the accumulated or earned interest, nor reduce the lien below the value of the property * * *."

Laying aside rather serious questions as to the authority of the court under subsection k to reduce contract rates of interest on the mere application of the debtor after confirmation,[6] we turn to subdivision i of the statute. So far as pertinent that subsection provides that "the court shall confirm the proposal if satisfied that (1) it includes an equitable and feasible method of liquidation for secured creditors and of financial rehabilitation for the farmer; (2) it is for the best interests of all creditors * * *."

A proposed extension plan which reduces the contract rate of interest on a single secured debt from 6% to 4%, but which leaves intact higher rates on all other debts, unsecured as well as secured, can hardly be thought otherwise than discriminatory. It is true, as the debtor here says, that the reduction of the rate of interest on this large secured debt will be of benefit not alone to the debtor but to other creditors, in that the reduction will tend to lessen the time within which all other creditors may be paid in full. But we find no authority in the statute for sacrificing a senior creditor in order to improve the position of others of equal rank or to bolster up the claims of junior or unsecured creditors. Cf. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110. A plan which thus unfairly discriminates against one creditor for the benefit of his fellows is not of that equitable character which the court is authorized to confirm. It follows, as a matter of course, that if a proposal of that sort would be inequitable prior to confirmation, it is not rendered equitable because imported into the plan by court action after confirmation; and this irrespective of such general authority as the court may possess to modify the plan.

For the reasons given the order below must be held erroneous.

Reversed.

GARRECHT, Circuit Judge (dissenting).

This is a bankruptcy proceeding instituted pursuant to the provisions of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. The appellee made a proposal for an extension of time to pay its debts. The appellant presented and filed a claim for $150,000 with interest thereon at the rate of six percent per annum from the first day of October, 1937, secured by mortgages upon the real estate of appellee. After a number of hearings, at which objecting creditors appeared and were heard, the proposal was confirmed and approved by the court. After a hearing on appellant's claim, and some requirements in relation thereto having been complied with, the claim was allowed. Thereafter appellee filed a petition for a reduction of the rate of interest on the claim, to which appellant filed objections upon the grounds that the petition does not state facts sufficient to warrant the granting of the relief prayed for and that the court was without authority, power, or jurisdiction to grant such relief. The court entered the following order: "The application of debtor for a reduction of interest on the Bogart claim, in the above entitled cause is now before the court for consideration. The briefs for and against the application have been carefully considered, and as a result, the court is now convinced that the application of debtor presents a proper case for allowance of a reduction of interest, and that the court has authority to entertain such request; consequently, in the opinion of the court, the interest rate on the above claim should be reduced to 4% per annum, and it is so ordered."

The appeal is from this order.

From the transcript, the findings and decision of the District Court the following facts appear:

Miller Land and Livestock Company, appellee here, was carrying on the operations of a large and valuable farm business. Becoming involved in financial difficulties, it sought relief under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. This appellant, Frank Bogart, filed his claim in said proceedings, as a secured creditor and owner of several mortgages against certain lands owned by appellee.

Bogart's claim is based on certain deeds of trust on lands owned by debtor, by it acquired from Edwin L. Dana and Fra M. Dana, his wife, who, prior to their transfer of the premises to debtor, had executed these deeds of trust to one Samuel McKennan on September 29, 1919, to secure four promissory notes, each for the sum of $50,000 with interest, payable Octo-

---

[6] Doubts suggested here were not urged or considered in Cohan v. Elder, 9 Cir., 112 F.2d 967. The proposal there made by the debtor for the reduction of interest affected all creditors alike.

ber 1, 1924. On October 11, 1919, said McKennan transferred said notes and mortgages to Bogart, but the instruments of transfer were not recorded until March, 1934. Notwithstanding these transfers made in 1919, McKennan, on October 20, 1932, more than eight years after the maturity of said notes and more than thirteen years after he had transferred this indebtedness to Bogart, for the purpose of renewing and extending the mortgages made affidavit that the sum of $150,000 was still due and unpaid.

Certain creditors first appeared and challenged the sufficiency of the petition for the administration of debtor's property under Section 75. The court held that the petition was in proper form and that the petitioner was qualified under the governing statute, and that the petition should be filed and referred to the conciliation commissioner and the petitioner accorded relief under the Bankruptcy Act aforesaid, provided he complied with the provisions thereof. At a later hearing on the application of debtor for confirmation of the extension proposal certain creditors again objected. The court in its order, inter alia, said: " * * * there can be no doubt that this essential fact of acceptance of debtor's proposal as required by statute, a prerequisite to confirmation, has been established by evidence that is clear and convincing."

Thereafter appellant, in lieu of any rentals, elected to accept payments of ten percent of the indebtedness to him as established by the approval of his claim as provided in the proposal of the debtor. A payment being overdue a few days, appellant secured an order requiring debtor to show cause why the proceedings should not be dismissed and appellant granted permission to enforce his claim by foreclosure. In the return to the show-cause order the debtor alleged payment of amount due, setting forth valid reasons as the cause of the delay. Upon the hearing it developed that by reason of a difference as to the date from which interest was to be calculated it was found that the amount which had been paid was not sufficient to fully discharge the ten-percent payment due, and debtor was directed to make good the amount. The request of appellant to dismiss or allow foreclosure proceedings was denied.

In his return to the show-cause order the debtor prayed that the interest on appellant's claim be reduced from six percent to three and one-half percent. This application was not referred to in the above order entered by the court on April 7, 1941.

On April 29, 1941, appellant petitioned for another show-cause order alleging that the unpaid balance found due on April 7, 1941, had not been paid and again asked to be permitted to foreclose his mortgage. The debtor filed an answer to the show-cause application and also interposed a cross-petition. The answer set forth that the amount which appellant claimed to be the balance due was in excess of the amount actually due, again giving reasons for the delay in payment and asking for a reduction of the rate of interest. In this answer it is alleged:

"That since the commencement of this proceeding the Debtor has increased the value of the security of the said Frank Bogart in excess of $100,000.00 and that such improvements and repairs were necessary and proper in order to increase the productivity of the Debtor estate as a whole in order to more quickly and surely pay off the creditors of Debtor in accordance with its proposal. That the real estate upon which first mortgages exist claimed by Frank Bogart covers about 16,000 to 18,000 acres of the approximately 26,000 acres of the deeded land owned by Debtor and that the cost of all said land was $1,102,908.33, and said land has now been improved as above stated and approximately eighty per cent of said land and value are subject to said mortgages of the said Frank Bogart. That due to unusual financial and general economic conditions and existing litigation between Debtor and Fra and E. L. Dana pending in this Court and as yet un-adjudicated, Debtor has so far been unable to refinance the said Bogart claim but alleges that the said Frank Bogart is secured to an extent that to permit him to foreclose his said mortgages would enable him to take security worth $800,000.00 for a claim of approximately $180,000.00.

"That there are approximately $200,000.00 of unsecured claims approved in this proceeding and that if the said Frank Bogart is permitted to commence a foreclosure action it will destroy the greater part of the value of the assets not covered by any mortgage to Frank Bogart and such unsecured creditors would get little or nothing under such conditions."

With the answer debtor also filed a cross-petition, again requesting a reduction of the rate of interest. In addition to other matters this cross-petition alleged the following facts, pertinent on this appeal:

That the court had approved and confirmed the proposal of debtor, which was only for an extension of time for the discharge of its obligations;

That in the proceedings Bogart had filed, and secured the approval of, his claim for $150,000, which was secured by mortgages. This debt originally was for $200,000;

That since the said mortgage debt was created, debtor and its predecessors in interest have paid to Frank Bogart in various capacities or to his predecessors in interest approximately $220,000.00 in interest alone;

That pursuant to the proposal of debtor and the order confirming the same, the said Frank Bogart had elected to take ten percent of the debt as his annual payment, beginning on December 1, 1940; that on or about December 7, 1940, said creditor had petitioned the court to dismiss this proceedings and that it have permission to foreclose upon its security;

That on December 19, 1940, debtor paid to the said Frank Bogart $15,482.50 and the court denied the petition of said creditor;

That the claim of the creditor herein is based upon a debt secured by a first real estate mortgage upon property that at the commencement of this proceedings was worth greatly in excess of the amount of the said mortgage thereon; that since said time, debtor to increase the value and productivity thereof in order to pay off the said Frank Bogart and the other creditors as soon as possible and to preserve to the petitioner its valuable equity in said property, has made extensive and valuable improvements of such real estate and has secured property, necessary and adequate equipment to increase the income therefrom; that it has been necessary to secure part of such equipment on credit;

That petitioner believes and therefore alleges that the said Frank Bogart has not been and is not acting in good faith toward petitioner and its other creditors in that his actions demonstrate that he would rather have the security he claims than the money due him; that by acquiring the security he would make a large unearned and unjust profit at the expense of debtor and its unsecured creditors and that in an effort to bring about such result he has maintained and contemplates maintaining a series of vexatious, harassing and unfounded objections, petitions, motions and other proceedings whereby he hinders debtor from refinancing, takes the time of its management and causes unnecessary expense to the debtor;

That considering the value of the security, the amount of the investment, the present money market and all the circumstances surrounding such investment, as well as the best interests of all of the parties, including the unsecured creditors of debtor who have claims of approximately $200,000, it is just, equitable, and right that the court should reduce the interest rate upon said claim from six percent to three and one-half percent per annum and that the proposal heretofore made be modified accordingly insofar as the claim of Frank Bogart is concerned; that such modification would not adversely affect any other creditor but would be of benefit to debtor and such creditors.

Upon the hearing of the application for reduction of the rate of interest on the claim appellant appeared and interposed objections to the granting of "such relief upon the grounds and for the reasons:

"1. That said petition does not state facts sufficient to warrant the granting of such relief.

"2. That the Court is without authority, power or jurisdiction to grant such relief."

The court entered its order reducing the rate of interest to be paid during the pendency of the proceeding from six to four percent.

By his specifications of error appellant contends (1) that the court was without authority to entertain the application for a reduction of interest on his claim; (2) that the application did not present a proper case for such reduction; and (3) that the court erred in reducing the rate of interest.

For the purpose of considering the motions here presented all the allegations above set forth, taken from the answer and the cross-petition, relating to the reduction of interest on the claim, must be taken as true and correct.

Appellant insists that to construe the Bankruptcy Act as permitting a reduction of the amount of interest on this claim

during the pendency of the proceedings would be in violation of the Fifth Amendment to the Federal Constitution. In support of his position appellant cites: Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

An analysis of the above cases would readily show that the facts involved and the legal questions there presented and determined differed from those in the case at bar. Such an effort would be much in the nature of an academic discussion, and to no purpose, as all of the above decisions were rendered prior to the enactment of the amendment to the Bankruptcy Act, Section 203, sub. k, Title 11 U.S.C.A., which added the following clause " * * * nothing herein shall prevent the reduction of the future rate of interest on all debts of the debtor, whether secured or unsecured."

In the case of Bartels v. John Hancock Mutual Life Ins. Co., 5 Cir., 100 F.2d 813, affirmed 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, also cited by appellant, the farmer-debtor filed his application for relief under subsections a to r of Section 75 of the Act. After his proposals for composition or extension were denied, he filed an amended petition under subsection s, praying that he be adjudged a bankrupt. The District Court denied the application and dismissed the proceedings. An appeal was taken to the Circuit Court of Appeals, which reversed the District Court. Upon appeal to the Supreme Court the reversal was sustained. The question here involved was not in issue and the subsection of the act here under consideration was neither cited not discussed. Likewise, in Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, the statute here invoked was not cited nor discussed, the appeal being from an order confirming a plan of reorganization, which was held to be unfair and inequitable as permitting a dominating holding company to escape or reduce its liabilities 'by reliance upon self-serving contracts which had been imposed upon the subsidiaries. Under the complicated circumstances there set forth it was decided that bondholders were entitled to full and absolute priority as against the holding company, its subsidiaries, and their stockholders as well.

The due process of law as required by this amendment must refer to that law of the land which derives its authority from the legislative power conferred upon Congress by the Constitution. As meeting this requirement we have here the Federal Constitution expressly granting to Congress the power to legislate in matters of bankruptcy and the exercise of that authority by the Congress. In considering appellant's contention it must not be lost sight of, that this bankruptcy legislation is expressly authorized. Article I, section 8, clause 4, of the Federal Constitution vests Congress with the power "to establish * * * uniform Laws on the subject of Bankruptcies throughout the United States". The amended subsection k of Section 203 of Title 11 U.S.C.A.—the pertinent part of which reads, " * * * nothing herein shall prevent the reduction of the future rate of interest on all debts of the debtor, whether secured or unsecured"—was strictly within the authority granted by the Constitution.

As far back as Hanover Nat'l Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113, the Supreme Court, in an erudite opinion by Chief Justice Fuller, discussed the subject of bankruptcies and the effect of the Constitution and laws of Congress relating thereto. From this decision we quote the following pertinent passage (pages 187, 188 of 186 U.S., page 860 of 22 S.Ct., 46 L.Ed. 1113):

"The framers of the Constitution were familiar with Blackstone's Commentaries, and with the bankrupt laws of England, yet they granted plenary power to Congress over the whole subject of 'bankruptcies,' and did not limit it by the language used. * * *

"As the states, in surrendering the power, did so only if Congress chose to exercise it, but in the absence of congressional legislation retained it, the limitation was imposed on the states that they should pass no 'law impairing the obligation of contracts.'

* * * * *

"Counsel justly says that 'the relation of debtor and creditor has a dual aspect, and contains two separate elements. The one is the right of the creditor to resort to present property of the debtor through the courts to satisfy the debt; the other is the personal obligation of the debtor to pay the debt, and that he will devote his ener-

gies and labor to discharge it' ([Sturges v. Crowninshield], 4 Wheat. [122], 198, 4 L.Ed. 529); and, 'in the absence of property, the personal obligation to pay constitutes the only value of the debt.' Hence the importance of the distinction between the power of Congress and the power of the states. The subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Congress involves the power to impair the obligation of contracts, and this the states were forbidden to do."

The Circuit Court of Appeals for the Seventh Circuit in In re Prima Co., 88 F.2d 785, 788, 116 A.L.R. 766, answers the argument made here as follows:

" * * * As we stated in the Chicago, R. I. & P. R. Co. case, [In re Chicago, R. I. & P. R. Co., 7 Cir.], 72 F.2d 443, 452:

" 'Likewise, legislation which deals with the subject of bankruptcy, that is, legislation for the benefit and relief of creditors and debtors—is not subject to the same constitutional limitations as legislation which deals with other subjects and which affects contractual rights and obligations of debtors and creditors. The grant of power "to establish * * * uniform Laws on the subject of Bankruptcies" (Const. art. 1, § 8, subd. 4) was necessarily a grant of power the exercise of which would impair the obligation of contracts.'

"All parties to a contract are, of necessity, aware of the existence of, and subject to, the power of Congress to legislate on the subject of bankruptcies. * * * The amendments to the bankruptcy laws were not therefore necessarily an unlawful impairment of the contractual rights of either party. All loans were made and all credit extended with the knowledge that the power to enact such laws existed and application of such legislation might alter the contractual rights of the creditor. * * *

"The significant fact which this discussion is aimed to establish is that the Constitutional provision authorizing bankruptcy legislation existed when the contracts were made, and therefore all contracts were, and are, subject to all valid legislation which Congress may enact pursuant to the grant of power appearing in article 1, section 8."

Subdivision k of Section 75, 11 U.S.C.A. § 203, expressly authorizes the action taken by the court here: " * * * nothing herein shall prevent the reduction of the future rate of interest on all debts of the debtor, whether secured or unsecured."

The court in Van Schaick v. McCarthy, 10 Cir., 116 F.2d 987, 992, said: " * * * While the Congress may not impair the obligation of contracts by laws acting directly and independently to that end, it has authority to enact legislation on the subject of bankruptcies which may operate collaterally or incidentally to impair or destroy the obligation of private contracts. * * *"

This court has indicated its approval of this view. We said: "The statute clearly empowers the court to approve a proposal altering the rights of secured creditors * * *." In re Los Angeles Lum. Prod. Co., 9 Cir., 100 F.2d 963, 966, reversed on other grounds 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110.

Again: "Appellant urges the court abused its discretion in dropping the rate of interest pending the administration and that 3½ percent is so low as to be confiscatory. There is no merit in this contention * * *." Cohan v. Elder, 9 Cir., 112 F.2d 967, 970.

While the case of Kuehner v. Irving Trust Co., 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340, concerned the construction of a different section of the Bankruptcy Act, the reasoning of that case is persuasive here. There under Section 77B, 11 U.S. C.A. § 207, the District Court set a limit on a landlord's claim under a twenty-year lease with more than ten years to run. The Supreme Court held that the limitation was not arbitrary and was not the taking of the landlord's property without due process of law in violation of the Fifth Amendment.

Appellant presented his claim in these proceedings and engaged in litigation with respect thereto before the court. The court had jurisdiction of the subject matter and of the parties. The order of the court was authorized by the statute and the Constitution, and it in no way affects any interest on the claim which had accumulated prior to the institution of these proceedings in bankruptcy or prior to the filing of an allowance of appellant's claim.

It is also important to have in mind that this reduction of interest is only effective during the period that the debtor estate is being administered by the court.

The order of the District Court should be affirmed.