In re Eleanor L. **LOCKRIDGE**, Debtor.

**William E. Pierce, Trustee, Plaintiff,**

v.

**Conseco Finance Servicing Corp., Defendant.**

**Conseco Finance Servicing Corp., Third Party Plaintiff,**

v.

**RV Traders, Third Party Defendant.**

**Bankruptcy No. 0–02–01036–BHC–RJH. Adversary No. 03–00009.**

United States Bankruptcy Court, D. Arizona.

Dec. 15, 2003.

Steven M. Cox, Waterfall, Economidis, Hanshaw & Villamana, Tucson, AZ, for Defendant.

Larry O. Folks, Santin, Poli & Ball, PLC, Phoenix, AZ, for RV Traders.

Michael P. Lane, Lane & Nach, P.C., Phoenix, AZ, for Chapter 7 Trustee.

William E. Pierce, Chino Valley, AZ, Chapter 7 Trustee.

## OPINION

The Court must here determine who should bear the loss between an automotive dealership and a finance company when a chapter 7 bankruptcy trustee avoids a security interest that was not timely perfected. On these facts, the Court concludes that the loss must fall on the dealer who failed to perfect the lien prior to the bankruptcy case or within a timely manner thereafter.

### BACKGROUND FACTS

Adobe RV Sales, Inc./RV Traders ("RV Traders") sells recreational vehicles and trailers, which its customers frequently purchase on installment sales contracts. As typically done in the industry, RV Traders arranged contractually to sell its retail installment contracts to Conseco Bank, Inc., now known as Mill Creek Bank ("Conseco").

On July 25, 2002, RV Traders sold to the Debtor, Eleanor Lockridge ("Lockridge"), a 2001 Springdale fifth wheel trailer. Just before Lockridge took physical possession of the trailer, she signed a promissory note to Conseco, and a security agreement pledging to Conseco a security interest in

the trailer to secure the debt memorialized by the note.

Pursuant to its form Dealer Agreement,[1] Conseco agreed to purchase such contracts on the condition that RV Traders warrant that Conseco would have a "valid and perfected first priority security interest" in the vehicle that secured the buyer's debt. Paragraph 2(d) of the Dealer Agreement between Conseco and RV Traders provides that "Dealer represents and warranties: ... that Conseco shall have a valid and perfected first priority security interest in the Property...."

Within a week of the purchase Conseco funded the loan to Lockridge by crediting the account of RV Traders, allowing RV Traders to pay off its floor-plan financer. Apparently, RV Traders' title clerk took a vacation from August 3 through August 11, 2002. For whatever reason, RV Traders did not get the lien reflected on Lockridge's title certificate[2] until August 19, 2002, some 25 days after Lockridge purchased and took possession of the trailer.

In the meantime, Lockridge filed a chapter 7 bankruptcy case on August 12, 2002, 18 days after purchasing the trailer. The bankruptcy Trustee filed an adversary proceeding against Conseco, asserting the trustee's "strong arm" powers of 11 U.S.C. § 544(a)[3] to avoid Conseco's lien against the Trailer. Conseco filed a third party complaint against RV Traders, asserting that the Dealer Agreement required RV Traders to indemnify Conseco.

Although both Conseco and RV Traders opposed the avoidance of the lien, this Court granted the Trustee's motion for summary judgment and avoided the lien pursuant to § 544. With the lien avoided, Conseco's claim became unsecured.

Conseco and RV Traders then filed cross motions for summary judgment on the third party complaint. Conseco contends it is entitled to judgment on the indemnity provision[4] because it did not receive a "valid and perfected first priority security interest in the Property." RV Traders contends that the Dealer Agree-

---

1. RV Traders relies on a "Conseco Bank, Inc. Dealer Agreement" that was apparently signed by RV Traders in September 2000. Conseco relied on a "Retail Dealer Agreement (Non–Recourse)," which RV Traders contends was not signed until August 26, 2002 and was applicable only to sales made thereafter. RV Traders' argument appears to be correct, although the terms of the warranty do not vary materially between the two forms. There may be some variation, however, in the scope of the indemnity. The key issue here, however, turns on the warranty, which might also be found in a finance company's form of "without recourse seller's assignment." The "without recourse" or "nonrecourse" labels are somewhat misleading, because the recourse limitation is limited to the risk of debtor's nonpayment; there is recourse if the dealer breaches some 20 other representations and warranties, including the warranty to provide a valid and perfected first priority security interest.

2. Arizona Revised Statutes ("A.R.S.") § 28–2132 provides that the state motor vehicle department shall issue vehicle certificates of title that contain statements of all liens or encumbrances, and A.R.S. § 28–2131 provides that no security agreement, conditional sales contract, chattel mortgage or other lien (except a lien dependent upon possession) shall be valid against creditors of an owner unless it is so reflected on the certificate of title. Pursuant to A.R.S. § 28–2051, trailers are certificated vehicles.

3. Unless otherwise noted, all statutory and rule references are to the United States Bankruptcy Code, 11 U.S.C, §§ 101–1330, and the Federal Rules of Bankruptcy Procedure.

4. Paragraph 4 of the Dealer Agreement provided that "Dealer will defend and hold Conseco harmless from any and all claims ... which allege facts that would constitute a breach of any of the warranties in paragraph two ... resulting from acts or omissions by Dealer...."

ment only required it to indemnify Conseco against breaches of the warranty "resulting from acts or omissions by Dealer," whereas the avoidance of the lien occurred due to Lockridge's intervening bankruptcy. RV Traders also contends that when Conseco funded the loan on July 30 it sent RV Traders a "Merchant Report" that reminded RV Traders "to file Conseco Bank, Inc.'s lien with the appropriate government entity within 20 days," and that RV Traders did record the lien with 20 days of that reminder, on August 19.

After briefing and oral argument, the Court took the matter under advisement.

### JURISDICTION

Although neither party contests this Court's jurisdiction over the third party complaint, it is always the duty of a federal court to ascertain the existence of its subject matter jurisdiction as a threshold matter. The Court addresses jurisdiction here to explain why bankruptcy jurisdiction exists over this dispute that has no bearing on the bankruptcy estate.

Bankruptcy jurisdiction is defined by 28 U.S.C. § 1334. Section 1334(b) provides that "district courts[5] shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." The third party complaint does not arise under Title 11, but it arguably arises in or is related to the Lockridge bankruptcy case under Title 11.

Conseco had no claim against RV Traders until the Trustee sought to avoid its lien, and the trustee's lien avoidance action could only arise in a bankruptcy case, pursuant to Bankruptcy Code § 544. Consequently it could be argued that Conseco's third party complaint similarly "arose"

only in a case under Title 11. But in *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir.), *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995), the Ninth Circuit adopted the Fifth Circuit's interpretation that "arising in" refers only "to those 'administrative' matters that arise *only* in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based in any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.*, quoting *In re Wood*, 825 F.2d 90, 96–97 (5th Cir.1987)(emphasis in original). The opinion went on to equate such administrative matters with core proceedings, although technically core proceedings are relevant only to 28 U.S.C. § 157, which is not a jurisdictional provision but merely allocates bankruptcy jurisdiction between district courts and bankruptcy courts.

The Conseco third party claim is neither an administrative matter nor would it be nonexistent outside of bankruptcy. While a trustee's lien avoidance could only arise in a bankruptcy case, the third party complaint could be brought whenever a dealer fails to perfect the lien, or delays perfection long enough for another creditor to obtain an intervening lien. Consequently it does not appear that the third party complaint "arises in" this bankruptcy case under current Ninth Circuit law.

Therefore if jurisdiction exists here it must be "related to" jurisdiction. Very shortly after Congress redefined bankruptcy jurisdiction following the decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Third Circuit held that the "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is

5. This jurisdiction that is initially vested in the district courts is referred to bankruptcy courts pursuant to 28 U.S.C. § 157 and a general order of the district court.

whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)(emphasis in original). This has become known and accepted as the *Pacor* test for related to jurisdiction. In *Pacor* itself, the original complaint was by a nondebtor plaintiff against a nondebtor defendant for asbestos exposure, and the defendant asserted a third party complaint against Johns–Manville, which subsequently filed bankruptcy. The nondebtor defendant/third party plaintiff then removed the entire case to Manville's bankruptcy court. The Third Circuit affirmed the district court's remand of the original complaint to state court, noting that "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b)," the predecessor to § 1334(b). 743 F.2d at 994. "Judicial economy itself does not justify federal jurisdiction." *Id.*

The Ninth Circuit adopted the *Pacor* test in *Fietz v. Great W. Sav. (In re Fietz),* 852 F.2d 455 (9th Cir.1988). In *Fietz,* the debtor's claim and the debtor's wife's cross claim against Great Western Savings arose prepetition, but were not asserted until postpetition after the debtor's chapter 13 plan had been confirmed and the debtor's divorce was final. The Ninth Circuit adopted *Pacor* and held that jurisdiction was lacking over the ex-wife's cross claim because "its outcome could not have had any conceivable effect on the administration of the bankruptcy estate." *Id.* at 458.

In fact, however, the Ninth Circuit has not always applied the *Pacor/Fietz* test to determine bankruptcy court jurisdiction. In *Cowen v. Kennedy (In re Kennedy),* 108 F.3d 1015, 1017–18 (9th Cir.1997), the Ninth Circuit held that a bankruptcy court has jurisdiction to enter a money judgment against the debtor on a debt that the court has found to be nondischargeable. A nondischargeable money judgment against a debtor can have no conceivable effect on the estate, but rather only affects the debtor's continuing liability after the estate is entirely administered. Consequently jurisdiction should be lacking under *Pacor* and *Fietz.* Yet the Ninth Circuit found such jurisdiction "not merely because equitable jurisdiction attaches to the entire cause of action [presumably referring to the complaint to determine nondischargeability] but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt." *Id.* at 1018, quoting *In re Devitt,* 126 B.R. 212, 215 (Bankr.D.Md.1991).

The *Kennedy* opinion cited neither *Fietz* nor *Harris Pine Mills,* nor explained whether the jurisdiction was "arising under," "arising in," or "related to" jurisdiction. It must not be "arising in" jurisdiction under the *Harris Pine Mills* test, because the creditor's entitlement to judgment on its debt is neither administrative nor nonexistent outside of bankruptcy. So the jurisdiction must rest on "related to" grounds, meaning that the Ninth Circuit recognizes that "related to" jurisdiction is in fact broader than *Pacor* and *Fietz* would indicate. And the Ninth Circuit's reference to equitable jurisdiction applying to the entire cause of action and the inseparability of the issues effectively belies *Pacor's* dictum that "judicial economy itself does not justify federal jurisdiction." In fact, it has, at least since 1966. In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court approved of pendent jurisdiction over related state law claims that "derive from a common nucleus of operative fact" with the federal claims, justified by "considerations of judicial

economy, convenience and fairness to litigants."

Professor Brubaker's analysis demonstrates that the circuits, including the Ninth, that recognize jurisdiction to enter money judgments on nondischargeable debts necessarily recognize that "related to" jurisdiction is not limited by *Pacor's* effect-on-the-estate test but is instead a form of supplemental jurisdiction. Ralph Brubaker, *On the Nature of Federal Bankruptcy Jurisdiction: A General Statutory and Constitutional Theory*, 41 WM. & MARY L.REV. 743, 912–20 (2000). Moreover, the Interim Bankruptcy Rules adopted in 1979 provide legislative history that this is exactly what Congress intended by expanding jurisdiction under the 1978 Bankruptcy Code to include "related to" jurisdiction. *See Lang v. Lang (In re Lang)*, 293 B.R. 501 (10th Cir. BAP 2003); *Baker v. Friedman (In re Friedman)*, 300 B.R. 149 (Bankr.D.Mass.2003); *Hi–Qual Roofing & Siding Materials, Inc. v. Ridsdale (In re Ridsdale)*, 286 B.R. 238 (Bankr. W.D.N.Y.2002); Randolph J. Haines, *Old Rules Reveal Pacor's Shortcomings*, NORTON BANKR.L. ADVISER JAN. 2003, at 1.

Perhaps this issue has become purely academic after Congress' 1990 adoption of 28 U.S.C. § 1367, which expressly grants federal courts supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus even if bankruptcy jurisdiction did not exist under § 1334, supplemental jurisdiction may exist under § 1367 if the state law claims are so related. But the use of the identical term "related to" in both § 1334

and § 1367 also suggests that supplemental jurisdiction is what Congress always intended when it used that term in § 1334.

There has been some debate whether § 1367 jurisdiction is exercisable by bankruptcy courts and distinguished from district courts.[6] But the Ninth Circuit has clearly permitted it. *Kieslich v. United States (In re Kieslich)*, 258 F.3d 968 (9th Cir.2001). *See, also State of Montana v. Goldin (In re Pegasus Gold Corp.)*, 296 B.R. 227, 239 (D.Nev.2003)("The law of the Ninth Circuit is unambiguous that a bankruptcy court can exercise supplemental jurisdiction over state law claims when its basis for federal jurisdiction is 'related to' jurisdiction under § 1334."); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 912 (9th Cir. BAP 1995)("The bankruptcy court had supplemental jurisdiction over Appellant's state law claims," citing 28 U.S.C. § 1367(a) and *United Mine Workers v. Gibbs*); *Hawkins v. Eads (In re Eads)*, 135 B.R. 387 (Bankr.E.D.Cal.1991)(extensive and detailed analysis and application of § 1367 and the doctrines of *Gibbs* and ancillary and pendent jurisdiction to third party complaint filed by defendant in trustee's suit seeking indemnification).

Conseco's third party complaint is virtually identical to the third party complaint in *Eads*, which was cited with approval by the Ninth Circuit BAP in *Davis*. In both cases the initial complaint was filed by a bankruptcy trustee, on a cause of action that arose both under Title 11 and in a case under Title 11. In both cases the defendant filed a third party complaint seeking indemnification on a state law theory. In both cases the third party complaint is so related to the initial complaint,

---

**6.** *See, e.g., Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995); *Walker v. Cadle Co. (In re Walker),* 51 F.3d 562, 570–73 (5th Cir.1995); Susan Block–Lieb, *The Case* *Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 FORDHAM L.REV 721 (1994).

for which federal question jurisdiction exists, that all of the claims form part of the same Article III case or controversy within the meaning of § 1367 and *Gibbs*. Jurisdiction therefore exists here under § 1367, even if it did not exist under § 1334.

 It remains to determine whether the bankruptcy jurisdiction that exists is core or noncore. This may be a moot point because by filing cross motions for summary judgment both parties may be deemed to have consented to the bankruptcy court's determinations pursuant to 28 U.S.C. § 157(c)(2). But even without such consent the third party complaint should be deemed to be core. This is because under § 157(b) the core determination is made with respect to the entire proceeding, not with respect to each particular claim made within a proceeding. "Proceeding" is a term of art that refers to adversary proceedings, which are defined by Bankruptcy Rule 7001. Section § 1334(b) makes clear that jurisdiction exists, or does not exist, for the entire "proceeding," and the premise of both § 1367 and *Gibbs* is that even third party actions may be deemed to be part of "the same case or controversy." Nothing in § 157 suggests that "core proceeding" is used in any less-inclusive sense, to apply only to portions or certain claims pending in a case or proceeding. Consequently if the proceeding is core because, for example as in this case, it arises from a trustee's lien avoidance action, which is specifically defined to be "core" by § 157(b)(2)(H) & (K), the entire "case or controversy" must be core.

### ISSUE

The resolution of this matter lies within the Dealer Agreement between the two parties. The principal question is: Did RV Traders fulfill its contractual obligation to provide Conseco "a valid and perfected first priority security interest in the Property"?

### ANALYSIS

 Absent the bankruptcy filing by Lockridge, RV Traders may have satisfied its warranty to provide a valid and perfected first priority lien against the trailer. RV Traders recorded the lien on August 19 and, but for the bankruptcy, there is no indication in the record that such lien was either invalid or less than first priority.

The bankruptcy filing, however, had two consequences. First, the automatic stay of § 362 became effective upon the filing, on August 12. Ordinarily, this would stay RV Traders from perfecting the lien thereafter, because § 362(a)(5) specifically prohibits "any act to ... perfect ... against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." There is an exception, however, for purchase money liens such as the RV Traders/Conseco lien. Section 362(b)(3) permits "any act to perfect ... an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." Section 546(b)(1) provides that the trustee's rights and powers are "subject to any generally applicable law that ... permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." That somewhat obtuse language refers to laws such as the Uniform Commercial Code ("U.C.C.") § 9–317(e),[7] which permits a

---

7. Adopted in Arizona as A.R.S. § 47–9317(E). As noted in the Official Uniform Commercial Code Comment to § 9–317(e), although this provision only refers to the filing of a financ-

purchase money security interest to have priority over a lien that arises prior to perfection of the purchase money security interest, provided the perfection occurs within 20 days of the date the debtor took possession of the collateral.

■ But the trustee's rights here were not "subject to such perfection" as required by the stay exception of § 362(b)(3), because the perfection did not occur within 20 days of the debtor's receipt of possession of the collateral. As noted above, Lockridge took possession of the trailer on July 25, and the lien was not perfected by recordation on the certificate of title until 25 days later, on August 19. Because the trustee's rights were not subject to perfection after expiration of the purchase money grace period, § 362(b)(3) did not provide an exception from the stay to permit the perfection. Under Ninth Circuit law, a violation of the automatic stay is void, not merely voidable. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 575 (9th Cir.1992). Because RV Traders' act of perfection was void, RV Traders did not provide Conseco with a perfected lien, in violation of its warranty to do so.

■ RV Traders also breached its warranty under an alternative analysis. Bankruptcy Code § 544(a)(1) provides the Trustee with the rights of a hypothetical judicial lien creditor as of the date of the petition. Under U.C.C. § 9–317(a)(2), a security interest is subordinate to the rights of a lien creditor that arise prior to

perfection of the security interest. The Trustee's lien creditor rights arose on August 12, prior to perfection of the security interest on August 19, so the security interest was not a "first priority" as RV Traders warranted it would be. As noted above, this priority would have been reversed if the purchase money security interest had been timely perfected within the 20 day grace period, but once that window closes without perfection the ordinary priority rules apply.

It should be noted that these conclusions do not necessarily apply to all situations where a lien is avoided by a bankruptcy trustee's avoiding powers. A different situation may exist if the purchase money lien were perfected outside the 20 day window, but prior to the filing of the bankruptcy case. If the delayed perfection occurred within 90 days prior to the bankruptcy filing, the lien might be avoided as a preference under § 547.[8] But such preference avoidance may not necessarily constitute a breach of the warranties of a typical nonrecourse seller's assignment that follows the form used by Conseco. Under such as scenario, the dealer in fact provided a valid and perfected first priority security interest, and it remained valid at least up until the bankruptcy filing. Some court may have to determine whether a subsequently avoided security interest breaches the warranty (which does not in so many words require that the valid security interest be unavoidable), or whether the fact that it was valid and perfected for

ing statement, § 9–311(b) essentially equates this to compliance with a certificate of title statute for obtaining priority over the rights of a lien creditor.

8. This is because the "transfer" of the security interest is deemed to occur at the time of perfection unless perfection occurs within 10 days of the time the security interest is granted, pursuant to § 547(e)(2)(B). When such a transfer of a security interest occurs at the

time of such delayed perfection, it may be a transfer on account of an antecedent debt, which arose more than 10 days earlier, and therefore become subject to avoidance as a preference pursuant to § 547(b). And if the perfection did not occur within 20 days of the debtor's receipt of possession, then the exception of § 547(c)(3) does not save the purchase money security interest from the preference attack.

a period of time up until the bankruptcy means the warranty was satisfied. Perhaps this will turn on whether the dealers warranty is akin to a real property warranty of title, that is either satisfied or breached when title transfers, or is a continuing warranty. But we need not answer these more difficult questions to resolve this case.

Here, the express terms of the warranty were breached, both because the automatic stay voided the delayed perfection, and because the trustee's strong arm powers gained first priority over the security interest even if the perfection were deemed valid. It remains to address RV Traders' defenses to this analysis.

■ RV Traders argues that Conseco's Merchant Report of July 30, 2002 effectively modified the warranty by the following language: "REMINDER: By accepting these funds you acknowledge the dealer responsibility according to the terms of the dealer agreement to file Conseco Bank, Inc.'s lien with the appropriate government entity within 20 days." RV argues that because the lien was perfected within 19 days of the receipt of that report, RV Traders complied with the modified contract requirements.

The Court rejects RV Traders' argument for three reasons. First, nothing in the reminder indicates that the parties intended it to be a contract modification. To the contrary, its manifest intent was merely to remind the dealer of the contractual terms already agreed to. Second, even if this reminder modified the contract, it did so by adding a requirement to file the lien within 20 days. This does not necessarily relieve the dealer of its existing obligation also to provide Conseco "valid and perfected first priority security interest in the Property." Finally, the reminder does not specify when the 20–day countdown begins. While the date of re-

ceipt of the fax is one permissible reading, it is not the most likely given that dealers and financers understand the origin and significance of the 20–day requirement. They understand this is not merely some arbitrary time period chosen by the financer, but rather that it derives from U.C.C. § 9–317(e). Therefore the logical reading of the reminder is that it reminds the dealer to record the lien within 20 days of the debtor's receipt of possession. This RV Traders did not do.

■ RV Traders also argues that Lockridge's bankruptcy filing intervened, and that any resulting breach of warranty therefore did not result from "acts or omissions by [RV Traders] its employees or its agents in connection with the sale of any Products" as required by the indemnification clause of the contract. This argument also fails, because RV Traders made a contractual obligation to Conseco to provide a "valid and perfected first priority security interest in the Property." The filing of the bankruptcy case on August 12 did not prevent RV Traders from satisfying its obligation because, as noted above, §§ 362(b)(3) and 546(b) still permitted RV Traders to obtain a valid and perfected first priority lien up until August 14. The bankruptcy did not cause Conseco's failure to obtain a first priority lien, but instead RV Traders' omission, or perhaps the vacationing employee's omission, in waiting to file the purchase money security interest with the Arizona Motor Vehicle Division until the twenty-fifth day caused the breach of contract.

## CONCLUSION

Because there are no material facts in dispute, this Court finds summary judgment appropriate. The Court concludes from the undisputed facts that RV Traders materially breached its warranty to provide Conseco a "valid and perfected, first

priority lien" against the trailer. Consequently Conseco is entitled to indemnification from RV Traders pursuant to paragraph 4 of the Dealer Agreement, and is entitled, at its option, to charge back to RV Traders the amount of the Lockridge purchase pursuant to paragraph 3(a) of the Dealer Agreement.

Counsel for Conseco is requested to lodge a form of judgment consistent with this opinion.