**In re Rick BRITT, Debtor.**

**William E. Pierce, Plaintiff,**

**v.**

**Bank of the West, Defendant.**

**Bank of the West, Third Party Plaintiff,**

**v.**

**Bradley Chevrolet, Third Party Defendant.**

Bankruptcy No. 0:06–bk–00123–RJH.
Adversary No. 0:06–ap–00029–RJH.

United States Bankruptcy Court,
D. Arizona.

May 2, 2007.

---

Danelle G. Kelling, Esq., John G. Sestak, Jr., Esq., Jennings, Strouss & Salmon, PLC, Phoenix, AZ, Attorneys for Bank of the West.

Kenneth E. Moyer, Esq., Wachtel, Biehn & Malm, Lake Havasu City, AZ, Attorneys for Bradley Chevrolet.

Michael P. Lane, Esq., Lane & Nach, P.C., Phoenix, AZ, Attorneys for William Pierce, Trustee.

## OPINION GRANTING SUMMARY JUDGMENT IN FAVOR OF THIRD PARTY DEFENDANT BRADLEY CHEVROLET

RANDOLPH J. HAINES, Bankruptcy Judge.

This case concerns a car dealer's warranty to provide its financing bank a "sole perfected first lien security interest in the vehicle to be conveyed to bank." The question is whether this warranty is breached when the dealer perfects the lien after 30 days, the buyer files bankruptcy within 90 days, and the trustee avoids the lien as a preference.

The Court concludes the warranty was not breached because in fact the bank was provided a "sole perfected first lien security interest." The dealer did not warrant that the lien would be unavoidable as a preference.

## Factual Background

Bradley Chevrolet (hereafter "Dealer") sold the vehicle to Rick Britt (hereafter "Debtor") on February 24, 2006. Dealer then had a master installment sale contract agreement with Bank of the West (hereafter "Bank") by which the Bank agreed to purchase some, but not necessarily all, installment sale contracts generated by the Dealer's sale of vehicles. On February 24 the Bank at least conditionally accepted the purchase of the Dealer's installment sale contract with the Debtor and it was identified on that contract as the assignee.

The Dealer's contract with the Bank contained two express warranties that are at issue here:

Dealer warrants that as of the sale of a contract to Bank:

a. Dealer has caused title to the contract, free of any lien or encumbrance, and a sole perfected first lien security interest in the vehicle to be conveyed to Bank;

. . .

e. The buyer has and shall have no defense, offset or counterclaim as to the enforcement of the contract arising out of the conduct of dealer (or out of previous events). . . .

Arizona law requires a security interest in a motor vehicle to be perfected by filing an application with the Motor Vehicle Department ("MVD") and having the secured creditor's lien reflected on the certificate of title.[1] The timing of this perfection "dates from the time of receipt and filing of the documents by the department as shown by its endorsement."[2]

Debtor purchased the vehicle, took possession and granted the security interest on February 24, 2006. Dealer first delivered an application for title and registration to the MVD on March 15 and again on March 23, both of which were returned by the department as being defective. Dealer delivered a title and registration application to the MVD for a third time on March 27. For some unknown reason, it was not processed by the MVD until the next day because its endorsement reflects the date of March 28. The actual title that was issued reflects a lien date of February 24.

Thirty days after February 24, 2006 was March 26, which was a Sunday.

The Debtor filed a Chapter 7 petition on June 19, 2006, less than 90 days after the MVD endorsed the receipt of the March 27 title and registration application.

The Chapter 7 Trustee filed an adversary complaint to avoid the Bank's lien as an avoidable preference pursuant to Code § 547.[3] The Bank promptly tendered a defense to the Dealer pursuant to the terms of the Dealer agreement. The Dealer did not assume the Bank's defense. When the Bank answered the Trustee's complaint, the Bank also filed a third party complaint against the Dealer. The Trustee subsequently obtained summary judgment on its complaint against the Bank, avoiding the lien; the Bank did not respond to the motion for summary judgment because it concluded it had no defense. The Bank then brought a motion for summary judgment against the Dealer, which is presently before the Court.[4]

1. Arizona Revised Statutes ("A.R.S.") § 28–2132.

2. A.R.S. § 28–2133(B).

3. Except as otherwise noted, all chapter, section, and rule references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

4. In the meantime, the Trustee had sold the truck free and clear of liens for $20,000. The

## Analysis

For purposes of preference law, the transfer that occurs by the granting of a security interest is deemed made when it becomes effective between the transferor (the vehicle purchaser, the Debtor) and the transferee (the Bank), if it is perfected within 30 days of that time.[5] If it is not perfected within those 30 days, then the transfer is deemed made at the time the lien is perfected.[6]

Here, because the lien was perfected as of the date shown by the MVD's endorsement on the title and registration application, March 28, the perfection occurred 32 days after the lien had been granted to the Bank by the Debtor car purchaser.[7]

The Court concludes the statute must be applied as it is written. The perfection dates from the date shown by the MVD endorsement, rather than from the date the documents were delivered to the MVD.

The Dealer argues he did all he could to get the lien timely perfected by delivering the documents to the MVD on March 27th, and it should not bear the loss because some government official failed to endorse them that day. But the statute itself provides a mechanism by which dealers can entirely avoid the risk of the MVD's delay or inaction. If the title and registration application is "received and filed in a registering office of the department within 10 days after the date of their execution,"

---

debt then owed to the Bank exceeded $25,000.

5. Code § 547(e)(2)(A).

6. Code § 547(e)(2)(B).

7. There might be a difficult question if the endorsement had shown the same day the title and registration application were delivered to the MVD, March 27, which was a Monday. In that event it might be argued that the 30 day period referenced in § 547(e)(2) should be extended to that Monday by virtue of Bankruptcy Rule 9006(a): "In computing any period of time prescribed or allowed by ... any applicable statute, ... [t]he last day of the period so computed shall be included unless it is a Saturday, Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days." This raises questions as to the direction in which the time should be counted (and arguably the 90–day preference period is counted backwards from the petition date, whereas the 30–day time period of § 547(e)(2) should be counted forward from the date of granting the lien), and whether such time periods are substantive law that may not be affected by Rule 9006. The Ninth Circuit has held that the 90–day preference period is substantive and therefore may not be modified by Bank-

ruptcy Rule 9006, pursuant to 28 U.S.C. § 2075. *MBNA v. Locke (In re Greene)*, 223 F.3d 1064, 1070–71 (9th Cir.2000). An argument could possibly be made that this holding does not apply to the 30–day period of § 547(e). At least in part, the Ninth Circuit reached its conclusion as to the substantive rule because the 90–day time period references the date when a transfer occurred, not the date on which an affirmative act is required by someone. *Id.* at 1070 (*quoting with approval Research Group 80–21 v. Kendall (In re Bergel)*, 185 B.R. 338 (9th Cir.BAP1995)). Arguably, however, the 30–day period of § 547(e) *does* reference a date when an act is required to be taken, and this may be significant because it is an act that cannot be taken when a government office is not open. *See e.g. Saffron, Inc. v. Macon Kraft, Inc. (In re Saffron, Inc.)*, 134 B.R. 62, 68 (Bankr. M.D.Ga.1991) (10 day period of former § 547(e) is extended by Rule 9006 when 10th day falls on a Saturday or Sunday); *but see First Nat'l Bank of Portsmouth v. Plante (In re Plante)*, 38 B.R. 239 (Bankr.D.Me.1984) ("The Court finds no persuasive reason to distinguish these two periods [the 90 day preference period and the 10 day perfection period] for the purpose of determining whether or not Rule 9006(a) should apply."). But this argument might have already been rejected by the Ninth Circuit's tautological dictum "a 90–day period is a 90–day period." *Greene*, 223 F.3d at 1072. These are issues for another case.

530

then the perfection "dates from the time of execution." [8]

The Bank's principal argument is that the loss of its security interest was caused by the Dealer's failure to *"properly* perfect the Bank's lien" (emphasis added). The Bank argues the Dealer had two time frames within which it should have acted. First, the Dealer should have perfected the lien within 20 days after delivery of the collateral, so that the 20–day relation back rule for a purchase money security interest [9] would have protected the Bank against the risk an intervening creditor could have obtained a superior interest in the vehicle. Secondly, the Dealer should have perfected the lien within 30 days after delivery of possession, to provide the Bank a preference defense under Code § 547(c)(3).

While the Bank's arguments are certainly sound in that the Dealer *should* have perfected the lien within 20 days of possession in order to avoid these risks, the problem with the Bank's argument is that its master installment sale agreement does not contain a warranty that the lien would be perfected within these time frames, or even "timely." [10] The only warranty is that the Dealer has caused "a sole perfected first lien security interest in the

vehicle to be conveyed to bank." This was done. The security interest was perfected and it was the only security interest that ever existed in the vehicle, so it was necessarily a "first lien." And the fact that the lien was avoidable as a preference does not in any way detract from its being a "sole perfected first lien security interest." Under American preference law, in contrast to English preference law, a preference is "not necessarily fraudulent," but may be "innocent and valid." [11]

In order for the warranty to have protected the Bank against the lien being avoidable as a preference, it would have had to contain a requirement that the first lien be perfected "timely," or, perhaps better, within 20 days of the date the buyer receives possession of the collateral. [12] In the absence of such language, the dealer's late perfection, but before any intervening lien acquired superior status, satisfied the terms of the warranty.

Bank also argues that the warranty was breached by allowing the buyer to obtain a "defense, offset or counterclaim as to the enforcement of the contract arising out of the conduct of dealer." But the problem with that argument is that the Trustee's preference action is not a de-

---

8. A.R.S. § 28–2133(B).

9. A.R.S. § 47–9317(E) (UCC § 9–317).

10. This is the fact scenario and legal issue the court anticipated in *Pierce v. Conseco Fin. Servicing Corp. (In re Lockridge)*, 303 B.R. 449, 457–58 (Bankr.D.Ariz.2003).

11. II Garrard Glenn, Fraudulent Conveyances and Preferences § 382, at 661 (rev. ed.1940) (*quoting Coder v. Arts*, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 [1909]; and *Van Iderstine v. Nat'l Disc. Co.*, 227 U.S. 575, 33 S.Ct. 343, 57 L.Ed. 652 (1913)).

12. The apparent 30–day grace periods provided by Code §§ 547(c)(3) and 547(e)(2) are traps for the unwary. If the lien is not per-

fected within 20 days in order to obtain the relation-back effect provided by the Uniform Commercial Code for purchase money security interests, there is still a risk the lien might be avoidable if the purchaser files bankruptcy between the 20th and the 30th day and before the lien is perfected. A bankruptcy filing in that time period and while the lien is unperfected would give the trustee the rights of a lien creditor as of the date of filing, pursuant to Code § 544(a)(1). The trustee's hypothetical lien creditor status would be superior to the security interest that is perfected after 20 days, despite the 30–day protection provided against preference avoidance.

fense, offset or counterclaim that could be asserted by the buyer. By the express language of § 547, preference actions are assertable only by a trustee in bankruptcy, not by the debtor.[13]

The Court therefore concludes the Dealer did not breach its warranty to provide the Bank a sole perfected first lien security interest free of any defense, offset or counterclaim that the buyer could assert. The Bank's motion for summary judgment must therefore be denied. And, because there are no facts in dispute and the Bank has had a full and fair opportunity to present all facts and argument that might bear on the issue, it is appropriate to grant summary judgment for the Dealer even though it had not cross moved for summary judgment.[14]

**13.** This leaves for another day the question of whether such a warranty might be breached if the buyer files a Chapter 11 and, as debtor in possession, asserts the trustee's avoiding powers pursuant to Code § 1107. Is a debtor in possession the same person as the debtor and therefore identical to the buyer? *See e.g., NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

**14.** *Kassbaum v. Steppenwolf Prods., Inc.,* 236 F.3d 487, 494–95 (9th Cir.2000); *Sohappy v. Hodel,* 911 F.2d 1312, 1320 (9th Cir.1990); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d,* § 2720, at 345–54 (1998).